BUCHER & GIBBS PLOW CO. v. INTERNATIONAL HARVESTER CO. OF AMERICA.

(District Court, N. D. Ohio, E. D.    November 25, 1913.)

No. 115.

1. PATENTS (§ 26*)—INVENTION—NEW COMBINATION OF OLD ELEMENTS.

A new combination of elements old in themselves, but which produces a new and useful result, involves invention and entitles the inventor to a patent.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 27–30; Dec. Dig. § 26.*]

2. PATENTS (§ 283*)—VALIDITY OF REISSUE—INTERVENING RIGHTS.

An infringer cannot claim an estoppel against a reissue patent as having acquired intervening rights, where its structure contains all the elements of the original patent.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 448–450, 452; Dec. Dig. § 283.*]

3. PATENTS (§ 328*)—VALIDITY AND INFRINGEMENT—DISC HARROW.

The Niesz reissue patent, No. 13,163 (original No. 916,361), for a disc harrow, is for the same invention as the original patent, was properly granted, was not anticipated, and discloses patentable invention, also *held* infringed.

In Equity. Suit by the Bucher & Gibbs Plow Company against the International Harvester Company of America. On final hearing. Decree for complainant.

A. S. Pattison, of Washington, D. C., for plaintiff.

Banning & Banning, of Chicago, Ill., for defendant.

DAY, District Judge. This case is a suit charging infringement of the Niesz reissue patent, No. 13,163, of November 1, 1910, relating to disc harrows. The Niesz patent was issued to the Bucher & Gibbs Plow Company, the complainant herein, as the assignee of Frank B. Niesz, the inventor. Original patent No. 916,361, of which the patent in suit is a reissue, was dated March 23, 1909, and the application for the reissue was filed July 19, 1910. The original and reissued patents are for the same invention and both for a new type of harrow. The new patent was issued under the provision of Revised Statutes, § 4916 (U. S. Comp. St. 1901, p. 3393), and chiefly for the reason that the claim of the original patent was defective, incomplete, and insufficient for the purpose of protecting the invention disclosed and described in the original patent. Complainant commenced the manufacture and sale of the device in controversy in August, 1908, and by June, 1909, had sold 678 harrows. In May, 1909, the defendant purchased one of the complainant's harrows, involving the claims of the invention here in controversy.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Now, on examination of the harrows manufactured by the complainant and the defendant, it is plain that the defendant's harrow is an exact duplicate of the structure manufactured by the complainant under its patents, with the exception that the so-called anti-tilting device placed upon the defendant's structure has a different arrangement from that placed upon the complainant's structure, so that, if the complainant is entitled to the protection of the patent claimed, there is no question but that the defendant's structure infringes. The type of harrow in controversy is what is known as a double-disc harrow. The structure comprises a front harrow frame and a rear harrow frame; the object being to provide a harrow disc construction in which two sets of harrow discs shall be arranged in tandems flexibly connected to facilitate the turning of the structure as a whole and to avoid throwing the ground up into ridges when turning corners or when the harrow is moved out of a straight line. The rear harrow frame is flexibly connected to the center of the front harrow frame in the form of a vertical pivot, between the forwardly extending reach of the rear harrow frame and the center of the rear portion of the front harrow frame. The front and rear harrow frames each carry two separate gangs of discs, which disc gangs or frames are pivoted to the front and rear frames and capable of adjustment to the end that the disc gangs or frames may be set at angular relation to each other. This adjustment is accomplished by means of levers. By reason of the adjustability of the four sets of discs, it is possible to adjust the disc gangs in the forward frame at an angle to each other, the lines of the angle diverging rearwardly, and to adjust the two gangs on the rear frame at an angle to each other with the lines of the angle converging rearwardly. For the purpose of overcoming the strains on the pivots of the rear gangs while in operation, the rear harrow frame has rigidly secured thereto a horizontal member which is engaged by a horizontal member on the inner end of each of the disc gangs; the one sliding with relation to the other to permit of the adjustment of the gangs to the desired angle, and at the same time affording a support to the inner ends of the gangs to overcome the tendency to irregularity in entering the soil. The flexible connection between the front and rear harrow frames permits of the automatic adjustment of the harrow to the inequalities of the soil, and enables the entire structure to be turned in a narrow space. The structure enables the double cultivation to be performed in the same time that a single cultivation could be performed by a single harrow frame.

The reissue patent contains six claims, but the fourth claim is perhaps the broadest. It provides:

"(4) In a harrow, the combination with a front harrow frame, and adjustable disc shafts carried thereby, of a rear harrow frame flexibly connected at its front end to the front frame at the point between the ends of the front frame, separate disc frames vertically pivotally connected to the rear frame, means adjustably turning the frames on their vertical pivots, and horizontal slidable engaging members between the disc frames and the rear frames to prevent a tilting movement of the disc frames."

The defendant contends that the invention sought to be protected by the reissue patent was a different invention from that covered by the

claims of the original patent; that the bill is wanting in equity by reason of the fact that the defendant has acquired intervening rights by the manufacture and sale of a certain number of harrows; and also that the patent is invalid.

As bearing upon the prior art, defendant has set up seventeen patents. Nine of them, Galt & Tracy (two), Nauman, Little, La Dow, Sharp (two), Lingren, and Wildman, consist of a single disc harrow. Five of these patents, Wilson, La Dow 388,567, Wright, Clark 712,996, and McVicar, are for a rigid double-disc harrow. It is quite probable that by combining various of these patents, and by making certain changes, removing certain parts, or reorganizing some of the parts which are found in these various patents, the structure claims by the Niesz patents can be built up. It is argued that Niesz had before him these prior structures, disclosed by these patents, and that the combining of these structures into the harrow of the Niesz invention was an obvious thing to do; that any mechanic would do it. It does seem simple, yet nevertheless it never was done before, and the novel combination of Niesz's evidently presented great utility, as shown by the adoption of this device by the defendant company.

[1] It is well settled that a new combination of elements old in themselves, but which produce a new and useful result, entitles the inventor to the protection of a patent. Expanded Metal Co. v. Bradford, 214 U. S. 381, 29 Sup. Ct. 652, 53 L. Ed. 1034; Potts v. Creager, 155 U. S. 197, 15 Sup. Ct. 194, 39 L. Ed. 275; Kryptok Company v. Stead-Leans Co., 207 Fed. 85.

The five patents showing efforts in the double-disc harrow field fail to disclose the combination and arrangement of parts which are the subject-matter of the Niesz patent in suit, which combination has undeniable advantages. It is important to determine whether the proper foundation for the granting of the reissue patent has been laid. The claim of the original Niesz patent is:

"In a disc harrow the combination of a front and rear disc frame, the rear disc frame consisting of parallel bars journaled intermediate their ends and a connecting bar, a head secured to said connecting bar and spaced plates secured to the head and means for rocking the rear disc frames upon their pivoted points, substantially as and for the purpose specified."

The structure of the defendant is practically a copy of the structure made by the complainant, with the exception that the anti-tilting devices are different in form and the manner of location, but perform substantially the same functions.

[2] The record discloses that the defendant knew of the Niesz patent at the time it was developing its harrow, and that the structure developed by the defendant was considered by the patent department of the defendant company, as whether or not it was within the scope of the original Niesz patent. It is also plain that the defendant's structure contains all the elements of the claim of the original Niesz patent.

The defendant, being in possession of these facts, cannot well claim an estoppel against the reissue patent. No intervening rights accrued to the defendant in this case upon which, in equity, it can rely. The

reissue of the patent under section 4916, Rev. Stats., has been frequently considered by the Supreme Court of the United States, and in the case of Topliff v. Topliff, 145 U. S. 156, 12 Sup. Ct. 825, 36 L. Ed. 658, the court has summarized all of the various decisions bearing upon this subject. The court said:

"From this summary of the authorities it may be regarded as the settled rule of this court that the power to reissue may be exercised when the patent is inoperative by reason of the fact that the specification, as originally drawn, was defective or insufficient, or the claims were narrower than the actual invention of the patentee, provided the error has arisen by inadvertence or mistake, and the patentee is guilty of no fraud or deception; but that such reissues are subject to the following qualifications: First. That it shall be for the same invention as the original patent, as' such invention appears from the specification and claims of such original. Second. That due diligence must be exercised in discovering the mistake in the original patent, and that, if it be sought for the purpose of enlarging the claim, the lapse of two years will ordinarily, though not always," be held as abandonment "to the public to the same extent that a failure by the inventor to apply for a patent within two years from the public use or sale of his invention is regarded by the statute as conclusive evidence of an abandonment of the patent to the public. Third. That this court will not review the decisions of the commissioner upon the question of inadvertence, accident, or mistake, unless the matter is manifest from the record; but that the question whether the application was made within a reasonable time is in most, if not all, such cases a question of law for the court.

"To hold that a patent can never be reissued for an enlarged claim would be not only to override the intent of the statute, but would operate in many cases with great hardship upon the patentee. The specification and claims of a patent, particularly if the invention be at all complicated, constitute one of the most difficult legal instruments to draw with accuracy, and, in view of the fact that valuable inventions are often placed in the hands of inexperienced persons to prepare such specifications and claims, it is no matter of surprise that the latter frequently fail to describe with requisite certainty the exact invention of the patentee, an error either in claiming that which the patentee had not in fact invented, or in omitting some element which was a valuable or essential part of his actual invention. Under such circumstances, it would be manifestly unjust to deny him the benefit of a reissue to secure to him his actual invention, provided it is evident that there has been a mistake, and he has been guilty of no want of reasonable diligence in discovering it, and no third persons have in the meantime acquired the right to manufacture or sell what he had failed to claim. The object of the patent law is to secure to inventors a monopoly of what they have actually invented or discovered, and it ought not to be defeated by a too strict and technical adherence to the letter of the statute, or by * * * artificial rules of interpretation."

[3] The claim of the original patent was defective and insufficient. The Niesz reissue is clearly for the same invention as the original, because the reissue claims cover the exact construction of the original patent. They do not include anything which is not contemplated and included in the disclosure and description of the original patent. It would not be equitable that the inventor should be defeated in protecting his real invention because of a mistake or inadvertence of his solicitor in drawing the claim of the original patent. In this single insufficient claim of the original patent, the patentee was attempting to claim the invention which was set forth and described in the specifications and illustrated in the drawings, and this same invention set forth and described in the specifications and illustrated in the drawing is the one defined in detail in the claims of the reissue patent in suit. The in-

ability of the solicitor of the patentee to put the claims in proper form to cover the real invention was plainly inadvertence on his part and would authorize a reissue, and in such case the cancellation of the claims of the original application or their rejection by the Patent Office would not be an abandonment of the invention, and would not preclude a reissue and a substitution of claims which properly defined the real invention. Toledo Computing Scale Co. v. Moneyweight Scale Co. (D. C.) 178 Fed. 557.

I accordingly reach the conclusion that the Niesz reissue patent is for a novel combination of elements, evidencing a new type of double-disc harrow; that the defendant's structure is an infringement of the reissue patent; that the reissue patent is for the same invention as that described and claimed in the original patent; that the original patent was defective and insufficient with reference to its single claim; that the defendant's structure includes all of the elements of the insufficient claim of the original patent; that the defendant cannot utilize the doctrine of equitable estoppel or intervening rights.

A decree may be drawn in favor of the complainant.