## OHIO RAKE CO. v. BUCHER & GIBBS PLOW CO.

(Circuit Court of Appeals, Sixth Circuit.  June 8, 1920.)

### No. 3349.

1. **Patents ⟨⟩25—Connecting disk harrows in one machine held combination, and not aggregation.**

   The connection of an in-throw set of disk harrows with an out-throw set in one machine, so that they operate together to give the desired results, is a combination, not a mere aggregation.

2. **Patents ⟨⟩26 (2)—Combination of old elements accomplishing better result invention.**

   A combination of elements, all of which were old, but which produce a new and better result, or the same result in a new and materially better way, is an invention.

3. **Patents ⟨⟩328—Reissue 13,163, for a four-gang disk harrow, held to disclose invention and to be infringed.**

   The Niesz reissue patent, No. 13,163, for a four-gang disk harrow, consisting of a set of in-throw disks connected by a flexible reach bar behind a set of out-throw disks, so that the disks are aligned in the space between the disk and the end, so that the whole harrow can be turned without tearing up the earth, *held* to disclose invention and to be infringed.

Appeal from the District Court of the United States for the Southern District of Ohio; Howard C. Hollister, Judge.

Suit by the Bucher & Gibbs Plow Company against the Ohio Rake Company.  Decree for plaintiff, and defendant appeals.  Affirmed.

Alfred M. Allen, of Cincinnati, Ohio (Allen & Allen, of Cincinnati, Ohio, on the brief), for appellant.

Harry Frease, of Cleveland, Ohio, for appellee.

Thomas A. Banning, of Chicago, Ill., amicus curiæ.

Before KNAPPEN, DENISON, and DONAHUE, Circuit Judges.

KNAPPEN, Circuit Judge.  Suit for infringement of reissued patent No. 13,163, November 1, 1910, to Niesz.  The device of this patent is a four-gang disk harrow; that is, one consisting of two sets, a front and a rear, each carrying two gangs of oppositely facing concavo-convex disks, the gangs of each set being adjusted angularly to each other.  In the front set the disks face outwardly, the angle of the gangs extending rearwardly, thus making what is called an "out-throw" harrow.  In the rear set the disks face inwardly, the angle of the two gangs extends forwardly, thus making an "in-throw" harrow.  The front set, when connected with the tongue, forms a completely operable out-throw harrow; the rear set, if its frame were similarly connected, would form a completely operable in-throw harrow.  In each case the concave face of the disks is presented to the earth.

It is necessary to the most effective cultivation that the disks carried by the rear frame track between those carried by the front frame, so that the soil turned by the forward disks is by the rearward disks turned back into the trench caused by the forward disks, thus leaving the soil smooth and uniform.  It is also essential to the

best results that the harrow be able to make short turns in the field without cutting into or scraping off the surface of the soil. To maintain proper tracking between the front and rear gangs, and at the same time sufficient flexibility to enable the harrow to turn without digging into the ground, the inventor connects the rear disk-carrying frame to the front disk frame by a reach pivotally connected to the rear end of the tongue, thus making a central, flexible draft connection. Supports for the ends of the gang frame between plates secured to the main rear frame are provided, to prevent tilting of the gangs in making a turn.

The first three claims embrace the front and rear disk-carrying frames as described, together with the central, flexible draft connection between them. The fourth, fifth, and sixth claims include also the anti-tilting device. We print in the margin the first claim in full, together with a description of the anti-tilting device contained in the fourth claim.[1] Both invention and infringement are denied. The District Judge found each of the six claims valid and infringed. This appeal is from the interlocutory decree awarding injunction and accounting.

1. *Invention.* Both separate out-throw and separate in-throw harrows, carrying respectively two gangs of disks diagonally disposed to each other, were old. The same is true of mere tandem arrangement of cultivating devices (as distinguished from front and rear double-disk gangs), as shown by Lyon's revolving harrow, Thompson's land roller, and Bramer's "wheel harrow."

The tilting device of the patent in suit was disclosed by Gault & Tracy (1886), and substantially by Clark (1902). Dow (1888) and Clark (1894 and 1902) had disclosed four-gang disk harrows, but neither had a central, flexible draft connection, but, on the contrary, each had a rigid connection between the two harrow frames. While Thompson's land roller and Lyon's revolving harrow, as well as some other cultivating implements, had shown central, flexible draft connections between front and rear members, Niesz was the first to clearly disclose in a four-gang disk harrow belonging to the art immediately in question a central, flexible draft connection between the two disk-carrying frames.

In so saying we do not overlook the fact that Wildman (No. 686,-174, November 5, 1901) disclosed a four-gang disk harrow; its rear portion being divided into two separate parts, whose shafts were mounted in frames pivotally connected together, the forward central

[1]"1. In a disk harrow, the combination with a front draft frame having two separate disk-carrying shafts adjustable to assume a rearwardly converging angle, and harrow disks carried by said shafts, of a separate rear disk frame having two separate disk-carrying shafts adjustable to assume a rearwardly diverging angle, harrow disks carried by the shafts, a reach bar having its rear end connected to the rear frame and extending forward to the front disk frame, and a horizontally swinging pivotal connection between the reach bar and the front frame and located in a longitudinal line with the apex of the converging angle of the forward disk-carrying shafts."

"And horizontal slidable engaging members between the disk frames and the rear frames to prevent a tilting movement of the disk frames."

part being "swivelly mounted in the frame * * * at the butt end of the tongue." But Wildman's invention involved no problem of preserving tracking alignment between front and rear gangs, for his front portion was merely "adapted to cultivate the central strip of ground not touched by the other two parts," which were widely separated. Moreover, it does not clearly appear that Wildman's rear frame was pivotally or flexibly connected with the front frame. Such connection is not disclosed in his specification, nor is it clearly contained as an element of either of his claims, nor clearly disclosed by either of the drawings. The words "pivotally mounted," found in the first claim, seem quite as likely to refer to the pivoting of the two portions of the central part to prevent tilting. The Wildman reference falls, in our opinion, within the rule referred to in Munising Paper Co. v. American Sulphite Pulp Co. (C. C. A. 6) 228 Fed. 700, 703, 143 C. C. A. 222, and cases there cited.

Nor do we overlook the Tschantz disk harrow patent, No. 344,-293, June 22, 1886. But while in the Tschantz harrow the frame carrying the rear set of disks is pivotally attached to the tongue, Tschantz does not properly belong to the art we are considering. Not only are both his front and rear shafts integral, and thus without angular adjustability of oppositely facing disks (as expressly called for in the first three claims of the patent in suit, and impliedly in the remaining three), but the disks are not concavo-convex, as are those of the patent in suit. All three expert witnesses so treat the disks of the Niesz patent, as do counsel for both plaintiff and defendant. The angular arrangement of the two gangs of disks in a given set seems to be provided on account of the concavity of the disks. Certain it is that in the modern disk cultivator the disks are concave, and nowadays such concavity is usually implied in the term "disk cultivator," although, strictly speaking, a disk need not be of that form. Moreover, the specification of the Tschantz patent states that "the clod-cutting disks are fixed rigidly on a shaft at an obliquity or inclination from a right angle, and both shaft and disks revolve. In revolving, therefore, the disks have a wobbling motion." [2]

[1] If Niesz's central, flexible draft connection, as applied to disk harrows of the type in question, involved invention, the claims are all, in our opinion, valid. Each contains that element, in some form of expression, and we are not impressed with the contention that the claims are subject to the defense of aggregation. It is not correct to say, as defendant's counsel says, that whatever invention there is in the Niesz patent must rest in "coupling an old single in-throw harrow in trailing or tandem relation to an old out-throw harrow." We think each of the claims in suit covers a true combination.

[2] It is a matter of at least curious interest that in defendant's Lathrop patent on disk harrows, applied for July 6, 1910 (4 days before the application for the Niesz reissue, 24 years after Tschantz and 9 years after Wildman), it is said: "Heretofore in such constructions the frames carrying the two gangs of disks have either been rigidly connected together to form a single rigid frame, or the frames for the two gangs have been separate and merely coupled in tandem, by a central coupling bar."

"The action of one part of the entire structure modifies and affects the action of the other part, and there is during the active period more than that mere aggregation which defeats a patent." Houser v. Starr (C. C. A. 6) 203 Fed. 264, 273, 121 C. C. A. 462; Mausoleum Co. v. Sievert (C. C. A. 6) 213 Fed. 225, 129 C. C. A. 569.

[2] The defense of aggregation apart, the claims may of course involve invention, despite the fact that every element is old, provided the combination accomplishes a materially better result or reaches that result in a new and materially better way. Loom Co. v. Higgins, 105 U. S. 591, 26 L. Ed. 1177; Loose-leaf Co. v. Leaf-Binder Co. (C. C. A. 6) 230 Fed. 120, 144 C. C. A. 418; Ferro Concrete Constr. Co. v. Concrete Steel Co. (C. C. A. 6) 206 Fed. 666, 668, 124 C. C. A. 466.

[3] But, in the view we take of the case, the question, so far as concerns this branch, is whether there was invention in applying to the four-gang disk harrow art the central, flexible draft connection previously used in cultivator arts not employing concavo-convex disks. In our opinion there was such invention. When Niesz entered the field, disk harrows had been in use 30 or more years. Every one knew that proper cultivation of the soil required that the disks be in angular relation to the line of draft; also that, if all the disks carried by a given frame faced in one direction, the lateral pressure of the soil and the diagonal inclination of the disks would tend to cause the entire series to move laterally on a diagonal line, causing what is called "side thrust"; but that the opposite facing of the disks of the gangs in a given series tends to counterbalance the side thrust of one gang with that developed by the opposing gang; hence the opposite facing of the two gangs of disks in a given set. But while, as appears without dispute, and indeed by concession, the disk harrow art had for years presented the live problem of how to combine sufficient rigidity for ordinary forward operation with flexibility enough to permit turning of the machine, without tearing up the earth and materially increasing the draft, yet until Niesz it had occurred to no one to employ the central, flexible draft connection used in other cultivating machines. Whether this was because the prior art recognized that the combination of in-throw and out-throw sets of disks had a tendency to lateral displacement, and so to interfere with the proper trailing of front and rear sets of disks (plaintiff's expert testifying, without dispute, to such prior art recognition), is not of controlling importance.

The fact of real significance is that, for some reason, prior to Niesz it seems to have been the accepted view among those interested in developing the disk harrow art that a rigid connection between front and rear gangs was necessary to the preserving of proper alignment in the forward operation. It is not important to determine the basis of that belief, nor is it necessary to invention on the part of Niesz that he should have known just why it was that through a central, flexible draft connection (notwithstanding, as stated, a supposed contrary tendency) the rear gang of disks would turn fully as effectively as in the case of an ordinary wagon wheel, or, as plaintiff's counsel contends, even more effectively. While, in the light alone of what Niesz

did, it would now seem that his conception ought to have been always obvious, the question of invention must be determined in the light of the further facts that until Niesz manufacturers were seeking a satisfactory solution of the problem before referred to, without finding it, and notwithstanding central, flexible draft connections as applied to other cultivating instruments were well known, and that Niesz's invention was received with great public favor; a large number of manufacturers, including defendant itself, obtaining licenses for manufacturing thereunder and operating under such licenses. The Niesz reissue was sustained, and infringement found, by District Judge Day in 1913; the decision not being appealed from. Bucher & Gibbs Plow Co. v. International Harvester Co. (D. C.) 211 Fed. 473.

2. *Infringement.* The important question on this branch of the case is whether Niesz's invention is broad enough to cover defendant's draft connection as a substantial equivalent for the device of the patent. We think this question must be answered in the affirmative. It is true that defendant's draft connection is not in the form of a single reach on the median line of the machine, but consists of two draft bars a short distance apart, one on each side of the median line and equidistant therefrom; each bar being pivotally and flexibly connected with the tongue, and at its rear end rigidly connected to a coupling bar, which in turn is pivotally connected at its front end to the respective gangs of the rear set. In our opinion the word "central," found in the fifth and sixth claims, does not necessarily mean "on the median line," but may properly refer to the central location generally. Equally, we think, the words "reach" and "reach bar" of the first three claims are not necessarily limited to a "one-piece" reach. We think that defendant has the substantial equivalent of plaintiff's central, flexible draft connection, notwithstanding the presence in defendant's machine of two draft bars which never change their relative position, and in spite of the fact that at one point in the turning the pull seems to be entirely on one bar, thus making a "lopsided pull," while the other [Niesz's] has a straight pull."

Defendant's circular advertises its draft connection as "flexible to a sufficient degree to allow turns to be made without straining the frame," and it accomplishes this result in substantially the same manner as does plaintiff's draft connection, and within the meaning of all the claims of the patent, unless plaintiff is to be limited to a unitary reach on an absolute median line. It is true that defendant's expert states that in his judgment defendant's device operates in better alignment in straight forward work than does plaintiff's, but not so effectively in the turning movement; but plaintiff's expert testifies to careful observation of both machines in practical field work, and that so far as he can see both are equally effective and work in exactly the same way in both straight forward operation and in the turning movement. It is also not without significance that during the 5 years between the issue of plaintiff's patent and the issue of the patent owned by defendant, and under which it manufactures, defendant acquired three separate patents, each apparently with the hope of accomplishing the result effected by plaintiff's patent, but without suc-

cess, and that the still later Imus patent, under which defendant operates, was obviously designed to accomplish the result found in plaintiff's patent and in the same manner, so far as possible without infringing. While no criticism is intended upon this action, yet the history stated, in connection with the previous history of the art, helps to throw light upon the question of infringement.

In our opinion plaintiff is not limited by the prior art, or by the terms of his claims, or both, to the specific construction shown in his patent. We think defendant should be held to infringe each of the six claims in suit.

The judgment of the District Court is accordingly affirmed.