BUCHER & GIBBS PLOW CO. v. INTERNATIONAL HARVESTER CO. OF AMERICA.

INTERNATIONAL HARVESTER CO. OF AMERICA v. BUCHER & GIBBS PLOW CO.

(Circuit Court of Appeals, Sixth Circuit. January 5, 1926.)

Nos. 4367, 4368.

1. Patents ⚖=328—Disc harrows, made by licensee, held not covered by license as affecting liability for royalties.

Disc harrows, made by one licensed to manufacture harrows under Niesz patent, 13,-163, held not covered by license as affecting liability for royalties.

2. Patents ⚖=211(1)—Making of machine to perform same functions as patented machine not exercise of rights under license.

Patent licensee's making of machine that will perform same functions as machine covered by patent is not the exercise of any right under license, unless there is an adaptation of principle covered by patent.

In Error to the District Court of the United States for the Eastern Division of the Northern District of Ohio; D. C. Westenhaver, Judge.

Action by the Bucher & Gibbs Plow Company against the International Harvester Company of America. Judgment for defendant, and plaintiff brings error, and the defendant brings cross-error to review order sustaining demurrer to particular defenses. Judgment affirmed, and cross-writ dismissed.

Charles Neave, of New York City, and Harry Frease, of Canton, Ohio, for Bucher & Gibbs Plow Co.

H. P. Doolittle, of Chicago, Ill., for International Harvester Co. of America.

Before DONAHUE, MOORMAN, and KNAPPEN, Circuit Judges.

MOORMAN, Circuit Judge. [1] This is a suit at law to recover royalties alleged to be due under an agreement granting to defendant a license under United States reissue patent 13,163 to Frank B. Niesz, assignor of plaintiff, to make and vend tandem disc harrows. The patent was adjudged valid as between the parties in Bucher & Gibbs Plow Co. v. International Harvester Co. (D. C.) 211 F. 473. After that adjudication, the license agreement was entered into, which contains a covenant that forbids defendant's questioning the validity of the patent in a proceeding of this kind. Defendant contends, however, that the harrow it is selling is not covered by the license. So the primary question here is the nature and scope of the Niesz invention in regard to the harrow that defendant is selling. It is the contention of plaintiff that defendant's harrows, though somewhat different in dimensions and arrangement of parts, is in principle the same as the Niesz harrow, whereas defendant's position is that they are fundamentally different, the only similarity between the two being the turning movement, which was not new in Niesz.

In Ohio Rake Co. v. Bucher & Gibbs Plow Co., 266 F. 891, this court considered the Niesz patent, adjudged it invention, and defined the scope of its monopoly. It appeared in that case, and was so held, that the patent was for a combination of elements, all of which were old, producing a new and better type of disc harrow. The contribution of Niesz consisted of a new means of hitching

a rear set of in-throw discs to a front set of out-throw discs. The connection, as pointed out in that case, was made by "a reach pivotly connected to the rear end of the tongue, thus making a central flexible draft connection." This method of joining the harrows afforded greater facility in turning, and resulted in the better tracking of the rear gangs. The flexibility in the draft connection permitted the turning of the harrow without strain resulting from resistance of the ground. The tracking benefits were produced by what is denominated as "the structural law of a disc harrow"; that is, the disc being arranged with oppositely facing sides, the lateral pressure or side thrust of one side was counterbalanced by that of the other, so as to keep the rear gangs in proper tracking relation with the front gangs. When the rear gangs were deflected or turned aside, the counterbalancing forces would, under ordinary conditions, act on the pivotal connection, creating a tendency to return the gangs to a normal tracking position.

But the evidence shows that the position of the rear gangs, even under the influence of the counterbalancing lateral pressure, could not be accurately maintained on sloping lands, and besides they were easily deflected or turned aside by obstructions or unusual resistance from the earth. The idea of the patent, however, consisted, as indicated, of a central and flexible draft attachment of the rear to the front harrow. This, it appears, is an element in each of the claims of the patent (Ohio Rake Company Case, supra), and this record brings forward no new art not brought to the attention of the court in that case.

Defendant's harrow, though accomplishing some of the same results as plaintiff's—perhaps with greater facility and concededly more accuracy—has some essential differences in principle. It has two connecting draft or reach bars pivoted to the front harrow frame, seemingly nearer the respective ends thereof than the center, and extending rearwardly towards the center, which are engaged midway between the front and rear frames by a U-shaped draft bar attached to the rear frame. The ends of the U-shaped bar at the point where attached to the rear frame are in line with the pivotal connection of the reach bars with the front frame. The line of draft is not central, but is at the outer opposite sides. Facility in turning is obtained by the telescoping of the U-shaped bars into the reach bars. When the front harrow is turned at a sufficient angle, the entire draft is thrown on one reach bar, and the opposite draft bar telescopes with the U-shaped bar and becomes idle. The extent of telescoping is limited to avoid contact between the rear and front gangs.

As has been observed, the central flexible draft connection of the Niesz patent permits the utilization of the "structural law of a disc harrow" to obtain the proper tracking by the rear gangs in straightway work. The defendant's harrow is different, in that in straightway work it has a substantially rigid connection maintained by the two outer bars, so that there is no utilization of opposing lateral pressure or side thrusts in the prevention of side movements of the rear harrow or the maintenance of alignment. It appears from a preponderance of the evidence, we think, that there is no perceptible departure from alignment in the rear gangs of defendant's device in straightway work under any condition except on hillsides, where there is a slight tendency to swing downhill as the result of gravity, which, however, is not sufficient to prevent the splitting of the ridges made by the front disc. Even in encountering obstructions, the gangs merely "jiggle" momentarily and then right themselves. On the other hand, the rear gangs on plaintiff's harrow are thrown out of alignment when brought in contact with obstructions or certain soil conditions, and the side sways on hillsides are often too great to allow of the splitting of the ridges made by the front disc. The balancing tendency of the opposing lateral pressure is the only force provided by Niesz to bring the rear gangs into alignment when once thrown out. The center of resistance is broader, and much less easily shifted on the rear gangs of defendant's harrow; the line of draft being always inside the draft bars. There is seemingly, in straightway work, no such thing as a central flexible draft connection to the harrow.

[2] If, notwithstanding the two reach bars, there is a central flexible draft connection or its equivalent on defendant's harrow, then obviously the sales which it has made must be regarded as having been made under the license, and the royalties sued for are due. But it was not an exercise of any right under the license to make a harrow that would perform the same functions as the Niesz harrow, unless there was an adaptation thereto of Niesz's idea of the central flexible draft connection. That connection's main function—aside from facility in turning, to which we have referred—is utilization of the balancing side thrusts to prevent the side swaying of the rear gangs. Defendant's present structure does not appropriate or utilize those

counterbalancing forces. Its draft connection is along the outer sides. There is substantial rigidity in the straightway work, and the flexibility is only utilized in turning. These differences, we think, place defendant's harrow without the patent.

The cross-writ was brought to review an order sustaining a demurrer to certain, defenses set up in the answer. The conclusions just announced render the questions presented thereunder wholly moot, and the writ is' dismissed. But the final judgment is affirmed.