### DUNHAM CO. et al. v. COBB.

Circuit Court of Appeals, Sixth Circuit.
May 17, 1927.

No. 4768.

1. Patents ⬡⟾328—No. 13,921, reissue patent, claims 1, 3, 4, for land roller pulverizer, held invalid.

Dunham reissue patent, No. 13,921, claims 1, 3, 4, for land roller pulverizer, *held* invalid for want of invention.

2. Patents ⬡⟾328—No. 1,420,351, for quick detachable frame members for land roller pulverizer, held not infringed, if valid.

Wagner patent, No. 1,420,351, for quick detachable frame members of land roller pulverizer, to permit removal and substitution of roller disks, *held* not infringed, if valid.

Appeal from the District Court of the United States for the Eastern Division of the Northern District of Ohio; D. C. Westenhaver, Judge.

Patent infringement suit by the Dunham Company and another against Edward W. Cobb. From a decree dismissing the bill, plaintiffs appeal. Affirmed.

Samuel W. Banning and George L. Wilkinson, both of Chicago, Ill. (Harry P. Doolittle, of Chicago, Ill., on the brief), for appellants.

H. A. Toulmin and H. A. Toulmin, Jr., both of Dayton, Ohio, for appellee.

Before DENISON and MOORMAN, Circuit Judges, and SIMONS, District Judge.

SIMONS, District Judge. The two patents in suit relate to a land roller pulverizer; the Dunham reissue patent being directed to the general structure of the implement, and the Wagner patent to certain details involving the quick detachability of the frame members to permit a removal or substitution of roller disks. The so-called roller pulverizer is an agricultural implement which comprises a front rank of roller disks furnishing an uninterrupted, corrugated surface from one end of the roller to the other, and a similar rear rank of smaller roller disks, with the corrugations arranged in staggered relation to the corrugations of the front rank. The axles of the two ranks are journaled in the ends of rocking side frames, which are connected to the main frame by pivot bolts, so that the frames and rollers formed by the disks are adapted to oscillate about an axis, which is between the vertical planes passing through the axes of the shafts of the disks, whereby the superimposed weight is distributed to both ranks.

The oscillatory mounting of the two rollers constitutes the main feature of the invention, and is the subject of claim 3, the principal claim of the patent. The pivot bolt also constitutes the draft connection between the main frame and the side frames, and the point of this connection is located above the plane which passes through the axes of the shafts of the front and rear ranks, causing greater draft strain to be applied to the front rank of roller disks than to the rear rank; the object being to increase the crushing and pulverizing action of the front roller disks. This point of connection is also located in advance of the center, between the shafts of the two ranks,

in order to impose greater dead weight upon the front rank. These features are claimed to be covered in claims .1 and 4 of the patent. The claims of the Dunham patent in suit are set forth in the margin.[1]

Defendant's implement employs similar front and rear ranks of roller disks, a main frame which receives and distributes the weight and the draft strain between the front and rear ranks, an arched end frame mounted in a pivotal manner on the main frame; it being claimed by the plaintiff that such frames are adapted to oscillate around an axis which is between the vertical planes passing through the shafts of the front and rear ranks, and that the draft connection between the main frame and the oscillating frames affords a means similar to that of the patented structure for proportional distribution of both superimposed weight and draft strain between the front and rear ranks. It is claimed that such connection is similar in function, and that the mechanisms are equivalent, in securing the claimed novel results disclosed in the Dunham patent. Defendant relies upon a number of defenses, including noninfringement, invalidity, due to anticipation by the prior art, and lack of invention.

[1,2] The District Court recognizing the Dunham patent as one granted in a very old art, and contributing but slight advancement to that art, considered that claim 3, the principal claim of the patent in suit, must be narrowly construed, and, so construed, to be limited to the physical pivoting of the rocking side frames upon the draft connection with the main frame. Making application of such interpretation, there appeared to be a wide difference between the single pivotal connection shown in the plaintiff's structure and the free floating connection in the alleged infringing device. Conceding, apparently with reluctance, but not deciding, that there might be some invention in the mounting of the single pivot of the plaintiff's oscillating frame in front of the center between the vertical axes of the front and rear cylinders, and this feature not being present in the alleged infringing structure, the court dismissed the bill because of noninfringement.

If we were to concede any novelty and invention to the Dunham patent in suit, and were to consider rather more broadly the claims of the patent as covering any device wherein the axis of oscillation of the secondary pivoted frame is located between vertical planes passing through the axes of the shafts, it would perhaps not be so clear to us, as it was to the District Judge, that there was no such axis of oscillation in the alleged infringing structure, even though it did not use the single pivot bolt shown in the plaintiff's implement. In view of the fact, however, that we base our decision upon considerations other than infringement, we confine our discussion to other issues involved.

Dunham was admittedly working in a very old art. His roller pulverizer was designed to prepare the soil for cultivation in a single operation by one implement, which cut the clods and at the same time disintegrated them by the crushing effect of the continuous roller. It was undoubtedly old in the parent art of soil cultivation to mount circular cutting disks in rank upon a roller. It was old in the art to use two such rollers, the larger one in front and the smaller one in the rear, with its cutting disks in staggered relation to the cutting disks of the front roller. It was old in the art to use a continuous cylinder for crushing purposes. It was old in the art to combine the cutting functions of circular disks with the crushing and pulverizing effect of a continuous roller by the use of a continuous corrugated cylinder.

---

[1] 1. A land roller having a main frame, a rocking frame, an axle mounted in the rear end of the rocking frame, a second axle mounted in the front end of said rocking frame, roller disks mounted on each of said axles, and means for connecting the rocking frame to the main frame to place the greatest weight on the roller disks on the front axle, substantially as described.

3. In a land roller, the combination of a main frame consisting of cross-bars and two downwardly projecting end members, a second frame pivotally mounted on each end member so as to freely oscillate thereon, two parallel shafts mounted in said secondary frames, a plurality of pulverizer disks mounted on the forward shaft, a plurality of pulverizer disks of smaller diameter than said first named disks mounted upon the rear shaft, the axis of oscillation of said secondary pivoted frames being located between vertical planes passing through the axes of said shafts.

4. In a land roller, the combination of a main frame consisting of cross-bars and two downwardly projecting end members, two secondary frames, each secondary frame having an upwardly projecting lug pivotally connected to the respective end member, two parallel shafts mounted in said secondary frames in a plane below the pivotal connection between said frames and the end members, a plurality of pulverizer disks mounted upon the forward shaft, a plurality of pulverizer disks of smaller diameter than said first named disks mounted upon the rear shaft, the axis of oscillation of the secondary pivoted frames being between vertical planes passing through the axes of said shafts.

In the parent art the superimposed weight was sometimes placed upon the front rank, sometimes upon the rear rank, and it was in some structures divided, so that part of the weight bore upon the front rank and part of it bore upon the rear rank. What Dunham claims to have done is to have brought the superimposed weight to one point by means of an oscillating side frame, pivoted and bearing upon the draft connection between the two rollers, so that both the weight and the draft strain might be distributed between such rollers. By putting the pivotal point of the rocking frame in advance of the center between the vertical axes passing through the shafts of the front and rear rollers, and above the plane between the shafts, he claims to have accomplished an unequal distribution of both the weight and the draft strain, so as to bring about the desirable result of putting the greater part of the weight and of the draft strain upon the front rank.

In the case of cutting implements, the prior art discloses a similar pivotal mounting, and a distribution between the two rollers of both weight and draft strain in the Gibson British patent, No. 13,776, as early as 1851, and in the Utting British patent, No. 915, issued in 1855. Appellant's answer to these prior disclosures is that they were in a different art, and relate only to cutting disk machines. The roller pulverizer is claimed to be the result of development in a new or sub-art. Assuming this to be so, it seems to us that it must necessarily follow, from the history of the art, that the roller pulverizer is the lineal descendant of the old cutting disk machine with the rocking frame, as disclosed in the Gibson and Utting patents, wedded to the old crushing or pulverizing device, as exemplified in the continuous crushing roller, and that this offspring is entitled by right of descent to the previously disclosed useful characteristics of the two ancestral estates.

Even were we to conceive of such differentiation between the new art, to which the appellant claims his structure belongs, and the parent art, it would seem to us to be clear that the pivotal mounting in the plaintiff's structure is such an application of an old device in an analogous way, and for the purpose of securing the same result—i. e., the distribution of weight and draft strain between two revolving cylinders—that neither novelty nor invention is contributed to the new art thereby. Penn. Railroad Co. v. Locomotive Engine Safety Truck Co., 110 U. S. 490, 4 S. Ct. 220, 28 L. Ed. 222; Frederick R. Stearns & Co. v. Russell (C. C. A.) 85 F. 218. In fact, in the latter case, decided by this court, the analogous use of the device therein considered, and the similarity of the result obtained, are not nearly so clear as they are in the instant case. Perhaps the facts of the present case fall more clearly in line with those of the case of Weir Frog Co. v. Porter (C. C. A.) 206 F. 670, the opinion of this court therein, fully discussing the principle involved and reviewing the authorities.

Considering, then, that there is no invention in the adoption by the appellant of the oscillating frame pivoted upon the draft connection between the axles of the rollers of the two cylinders, is there invention either in the mounting of the pivotal connection forward of the center between the vertical axes of the cylinder shafts, or in the mounting of such pivotal connection above the plane between the shafts? Having been taught by the prior art, or by analogy from a distinct art, that superimposed weight and draft strain can be brought to one pivotal connection, and so distributed equally to the two rollers, it seems perfectly clear that there must follow from such knowledge inevitably the knowledge that both weight and draft strain can be *unequally* distributed by moving the point of pivotal connection either forward or backward from the exact center between the two vertical planes of the axes of the shafts. The shifting of the axis of oscillation forward or backward to secure any desired inequality of weight distribution, does not seem to us to require even a high degree of that ingenuity which remains within the capabilities of a skilled mechanic. Such shifting of the axis of oscillation and its inevitable result can be seen in any playground where the venerable teeter-totter contributes to children's amusement.

Not quite so obvious, but in our judgment sufficiently clear as an elementary principle of mechanics, is the expected result of added strain upon the forward of two cylinders that must follow from the elevation of the pivot point above the plane between the axes of such cylinders. The draft strain being applied at the same point of the main frame, it must be clear that an elevation of the axis of oscillation above the plane between the axles will of necessity bring a greater part of the draft strain to bear upon the front cylinder. We conclude that neither the shifting of the pivot point forward of the center, nor the raising of it above the plane between the axles, rises to

the dignity of invention. Nor is the elevation of the pivot point to secure the expected result novel. It was disclosed in the Utting patent, and what we have said with reference to the relation between the generic and the specific art, and an analogous use to secure a similar result, would also apply here.

Much emphasis has been laid upon the decision of this court in its construction of the Niesz reissue patent, in the case of Ohio Rake Co. v. Bucher & Gibbs Plow Co. (C. C. A.) 266 F. 891. It is true that all of the surface resemblances between the Rake Company Case and the instant case are present. The two cases differ wholly, however, in the principle involved. The Niesz patent was a combination of old elements to secure a new result. In this case we have the introduction of an old element in a related art, whose function is the same, and the use of which produces exactly the same result; that is, the distribution of weight and draft strain between two tandem cylinders.

The validity of the Wagner patent in suit is not seriously urged, nor is its infringement by appellee with any insistence contended for. We find no reason for reaching any other or different conclusion with respect to it than that arrived at by the District Court.

The result of our decision being the same as that of the District Court, it follows that the decree entered therein must be affirmed.