## METROPOLITAN DEVICE CORPORATION v. WILLIAMSBURG ELECTRIC SUPPLY CO.

Circuit Court of Appeals, Second Circuit.
May 2, 1927.

No. 269.

1. Patents ⊗⇒328—956,135, claim 5, for electric cut-out used in connection with meter switch boxes, held valid and infringed.

Murray patent, No. 956,135, for electric cut-out used in meter service entrance switch boxes, *held* valid and infringed as to claim 5.

2. Patents ⊗⇒328—993,099, for electric meter connection block in meter switch box, held valid and infringed as to claim 3, and not infringed as to claim 6.

Palmer patent, No. 993,099, for electric meter connection block used in meter entrance switch box, *held* valid and infringed as to claim 3, and *held* not infringed as to claim 6.

3. Patents ⊗⇒328—1,028,268, claim 4, for case for electric meter connection blocks, held valid and infringed.

Palmer patent, No. 1,028,268, for case for electric meter connection blocks, *held* valid and infringed as to claim 4.

4. Patents ⊗⇒259(1)—Furnishing of part of patented combination, with intent that it shall be assembled and used in the combination, is "infringement."

Where a defendant furnishes one part of a patented combination, intending that it shall

be assembled with other parts thereof and a complete combination used or sold, such action is an "infringement" on the completed combination.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Infringement.]

5. Patents ⬦⟲328—1,036,317, claim 1, for protective casing for electric meter and cut-out devices connected thereto, held invalid for lack of invention.

Palmer patent, No. 1,036,317, claim 1, for a protective casing for electric meter and cut-out devices electrically connected thereto, *held* invalid for lack of invention.

6. Patents ⬦⟲72(5)—That function performed by combination patent may be accomplished by slight modifications of previous apparatus held not to show anticipation.

That the function performed by a combination patent may be accomplished by slight modifications of previous apparatus *held* not to show anticipation.

Hand, Circuit Judge, dissenting in part.

Appeal from the District Court of the United States for the Eastern District of New York.

Patent infringement suit by the Metropolitan Device Corporation against the Williamsburg Electric Supply Company. Decree for complainant, and defendant appeals. Decree modified.

O. Ellery Edwards, of New York City, for appellant.

D. Anthony Usina, of New York City, for appellee.

Before MANTON, L. HAND, and SWAN, Circuit Judges.

MANTON, Circuit Judge. This suit is upon four patents, all owned by the appellee, and all used in meter service entrance switch boxes sold by it. There are several other patented features of the appellee's commercial box, with which we are not here concerned. The appellant makes a switch box which is claimed to infringe the four patents in suit. The known type of installation before the appellee's was a block carrying the required fuses and cut-out devices, mounted on a wall or similar support, and covered by a box with its lower end open and the meter casing set close up against the end of this box, so as to prevent access to the within instrumentalities. With this old type, the box was opened to change the circuits within. The terminals were arranged so that the connections passed in various ways lengthwise and crosswise of the block. For each different shape of the meter casing, the whole box had

to be changed. The appellee's improved box makes use of the four patents.

[1] The Murray patent, No. 956,135, granted April 26, 1910, on an application filed February 3, 1909, provides for an electric cut-out, and in construction consists of a stationary removable fuse case, with one of the circuit terminals in the inclosing box brought into electrical connection with the other circuit terminal by means of a sliding block having a handle projection extending through a slot in the cover and operable from the outside; also means are provided in connection with the block for locking the same in position either to close or open the circuit, and the construction is such that, when the block is in circuit closing position, it cannot be removed from the box. Claim 5 alone is in suit. It provides:

"5. In an electric cut-out, a box, two fixed circuit terminals, a fuse case electrically connected to one of said terminals, a sliding member in constant contact with the other of said terminals and movable to make and break circuit to said fuse case, and a locking device for retaining said sliding member in adjusted position."

It thus provides a compact and convenient arrangement within the box of the terminals, the fuse case, and the sliding member constantly connected with one of the terminals, and movable to make and break the circuit to the fuse case; the sliding member, the switch having a provision for locking and the handle of it, which extends outside the box, for operating it from the outside of the box.

On the claim of anticipation, the appellant refers us to the patents to Perkins, 876,-910; Johnson, 718,632; Hornsby, 833,327; and Lake, 840,068. Considering them in the order named, the Perkins patent has no box inclosing the switch. What is referred to as a box in appellant's argument is but a bus bar. There is a guard which overlies a portion only of the switch blades. This is inoperative to prevent access to the terminals when the switch blades are lifted. The patent in suit, on the other hand, at all times incloses everything except the handle, which projects through a slot in the cover. Perkins' fuses are arranged with their terminals between spring fingers extending upward from contact plates which the specification of the patent says are not in contact with the plates. Also, when the switch handle is lifted, the conductors carried thereby are removed from the contacts on the base; the current through the fuse is therefore broken

at that end; the switch plates swing upward by the pivoted right ends of the lever, making a circular sliding contact with the terminals until the plates pass clear above them. There is, therefore, not the constant contact with either terminal.

In Murray's apparatus, the fuse comes at its end terminal at the right constantly connected to the circuit terminal, and has its opposite end in breakable contact with a sliding blade, which in turn makes constant contact with the opposite fixed circuit terminal. The sliding member is in constant contact with the circuit terminal at the left, and makes or breaks contact with the left-hand end of the fuse, and thus causes current to flow through the fuse or break the flow of such current. There is no such constant contact in Perkins'. When the handle is up, the contacts are broken. There is no lock on the Perkins switch, and it was not intended for the same uses as Murray's.

The Johnson patent is for a distribution panel by which two bus bars are connected at will to one or more branch circuits. The distributing boxes are different from meter boxes for entrance service. The lack of a lock and of a fuse case with end terminals marks the difference between a distributing box and meter service entrance switch boxes. Another difference is that Johnson's box cannot be locked without interfering with the operating of the switches. The handle of the switches swings up above the lever of the box cover, and the handles are entirely inclosed within the box. This box cannot be locked and operated in the way of the Murray box. It was this difference that made Murray's box useful in connection with the meter service entrance switch boxes. It has a capability of shifting the switch from one position to another by a handle projecting on the outside of the box and locking the switch in the desired position, so that the customer cannot change it, and so that he cannot use any current when the switch is open.

The Hornsby patent shows a distributing box without means for operating the switch from the outside, and with no means for locking the switches in their adjusted position. While he shows a lock in his drawing, he does not refer to it in his specification, and without such no function is described. The box must be opened before the switches can be swung out. It is apparent that it was not adapted to be used as a meter service box.

The Lake patent is for a distributing box with an extra meter space within the same box. A panel board is shown, with eight different meters, all mounted in the same box. The box must be open to read in one of these meters. It lacks the fuse cases electrically connected as described, and it lacks the lock for the switch. There is no lock for the switches, and their handles do not project through the wall of the box, so that they can be operated, or locked and unlocked, without opening the box.

Murray provides a switch box for the meter service line, with provisions for a non-serving lock by which the utility companies could, at any time, prevent customers connecting their service lines to the supply mains. These distributing boxes, referred to as prior art, are provided where it is desired to supply a number of branch circuits from a single supply circuit, in which case the branch circuits, being of smaller capacity than the main circuit, which it supplies, it is necessary to supply fuses in order to protect the small branches. They are a different class of devices and for different service.

The appellant has copied the appellee's electric cut-out and the box. It has an open box, in which there are two fixed circuit terminals, as provided for in Murray's patent. It has a fuse case, which is electrically connected to the terminal, and a switch blade, which is pivoted on its lower end, so as to be in constant contact with the other of the terminals. It must be movable to make and break the circuit to the fuse case. It may be lifted by an external handle to break the circuit at its upper end, whence a conductor leads up through the meter and then down to the fuse case. The locking device for retaining the sliding member in adjusted position is infringed by the appellant's use of a couple of lugs on the right-hand side of the box for locking the operating arm, and consequently the switch blades or sliding members, in adjusted position. The lugs are appertured for the passage of the hasp of a padlock. The testimony is that few of the boxes are actually locked. The companies use the switches in a small percentage of installations. It is immaterial that the lock is used so seldom. All the boxes have locking devices on them, and it has the advantage, as stated in the claim, of providing locking means if wanted. This combination of electric cut-out, thus arranged from the switch box by adaptation to the use referred to, was an improvement over the prior art, and has established a decided step in advance of that which had theretofore been made. This amounts to invention.

[2] The Palmer patent, No. 993,099, was granted May 23, 1911, on an application filed October 14, 1910. It is used in the meter entrance switch box. The claims sued on are 3 and 6, and are as follows:

"3. In a device of the character described, the combination of an insulating base, a first series of four terminals mounted thereon adjacent to one end thereof, a second series of four terminals mounted on said base adjacent to its opposite end, said terminals of said first series having contact surfaces, and each terminal of both series having two connection clips, two fuses connected to clips on each of two pairs of terminals respectively, and two conductors connected to clips on each of the other pairs of terminals respectively, said base having four depressed channels within each of which one pair of said terminals is located."

"6. In a device of the character described, the combination of an insulating base, a first series of four terminals mounted thereon adjacent to one end thereof, a second series of four terminals mounted on said base adjacent to its opposite end, said terminals of said first series having projecting contact surfaces, and each terminal of both series having two connection clips, two fuses connected to clips on each of two pairs of terminals respectively, and two conductors connected to clips on each of the other pairs of terminals, respectively, the terminals of said second series each having a projecting contact surface.

As to this patent, the appellant argues that it was anticipated by the prior patents to Schutt, 595,078; Le Manquais, 814,146; Kammeyer, 429,123; Klein, 660,113; and Jordan, 1,002,996. This patent is for a meter connection block, and has for its object to provide a combined fuse and test connection block suitable for use either with two or three wire meters; its construction being such that the connections used for test purposes on two-wire meters are also used for testing three-wire meters, which simplify and expedite the making of these test connections. It provides a combined fuse and connection block suitable for use with three-wire meters, in which the potential coil is connected at one end of the neutral main. We will consider the prior art patents in the order named.

The Schutt patent provides for a junction block with a multiplicity of circuits. It is not designed for connection to a meter permitting the measuring of a current under normal conditions and testing the meter without interfering with the customer's supply of current. It is connected with the meter. The several conductors run in cross-directions, some on the top of the block and some on the bottom, and they are connected to each other in a definite way by screws which pass through the block. It is a block for connecting cross-circuits and inserting fuses. The testimony shows that practically it is not possible to convert the fuse box of Schutt to the meter connection block of Palmer, as the witnesses say it will be necessary to build a new block. A skilled mechanic would not undertake to convert the block of Schutt into that of Palmer. Le Manquais patent is for a panel board with grooves running crosswise as well as longitudinally, and at the top as well as at the bottom, with connections running through the block from the top to the bottom terminals. It has no contact surfaces, as Palmer requires, for making test connections for the meter. There is testimony that the panel boards and meter service entrance switch boxes are recognized as distinct apparatus in the electrical supply industry.

Kammeyer's patent is for a covered fuse box without the grooves provided by Palmer. There is no corresponding arrangement of terminals, fuses, and clips provided by Palmer.

The Klein patent shows a panel board and fuse holder, with connections running in various directions and on opposite faces of the block. The fuses are not mounted on the base, but on a movable member. In the panel board, such as Kammeyer's, there is no occasion to use contact surfaces, like those of the patent in suit, for connecting to testing apparatus.

The Jordan patent is not a meter board block, but simply a switch or cut-out. Parts are arranged in depressed channels. What appellant calls contact surfaces and connection clips in the Jordan arrangement were not intended or designed or shaped to serve such purposes, and there is nothing resembling the upstanding connecting surface and connection clips of the Palmer patent and the appellant's own apparatus. The uses made, as described by the expert, of the apparatus under the patent for meter-testing connections, makes it appear that Jordan could not be used for the purposes of either the appellant or appellee. Jordan shows ordinary terminals and binding screws, with only strength enough to make connections within the box, without any extra projections to serve as contacts for meter-testing devices, and without any holes or other apparatus for holding the ends of the test wires.

Jordan's cut-out lacks the particular depressed channels, each carrying a number of terminals, and the terminals having each a projecting contact surface, all of which would indicate that the claims in suit cover new combinations having new uses. The patentee points out his first series of terminals at the lower end of the block, each being identical. There is an upwardly projecting blade, to which the patentee gives the term "contact surface"; since these, or some of them, are to be used with contact clips to make connections to meter-testing apparatus, each of the terminals has two binding screws, one at each end. The patentee refers to these as screw clips or connection clips. From the near terminal blade, the projecting plate contact surface is located between the two connection clips. The terminals are the plates, the contact surfaces, the projecting blades, the connection clips, and the binding screws.

As to claim 3 in the appellant's device, there is the insulating base on which the electrical device is mounted. There are four terminals at the bottom of this porcelain base and four at the upper end. The claim reads: "Terminals on the first series having contact surfaces." These are the two projecting blades shown in appellant's device. They are for connections to test wires and the like by means of detachable spring clips. There are only two of these in appellant's apparatus, and it argues that the claim requires four. But the language of the claim does not require such a limited interpretation. It does not say how many contact surfaces of said terminals the first series has. In claim 3 it is sufficient if there are a plurality of contact surfaces, two or more, on the terminals of the first series. The achievement of the combination is clear. In appellant's apparatus there are connection clips of the well-known equivalents for binding screws.

In appellant's apparatus we have the modern type of fuses, which, when screwed into place, make a connection with a button at the bottom of the socket connected to one of the terminals; and with a thread shell within the socket connected to the other terminal. There are present in the appellant's device the terminal connection clips. There are two fuses connected to clips on each of the two pair of terminals respectively. Here, also, there are two conductors connected to clips on each of the other pairs of terminals respectively. These conductors are switch blades. In function they are identical with the switches of the appellee's apparatus. An element of the claim, "a bus having four depressed channels in each of which a pair of said terminals is located," is indicated in appellant's box. While it is true there are two inner channels, which do not extend completely and unbrokenly from the upper to the lower end, they do extend sufficiently to hold the terminal blades in position against lateral displacement and to retard the passage of the current sideways from one terminal to the next. They are directly in line with each other.

We think claim 3 valid and infringed.

Claim 6 omits the four depressed channels, within each of which said pair of terminals is located, and in place thereof provides for terminals of the second series, each having a projecting contact surface. The appellant's apparatus does not have the projecting contact surface here referred to. We do not think claim 6 is infringed.

[3] The Palmer patent, No. 1,028,268, granted June 4, 1912, on application filed October 11, 1911, is for a case for meter connection blocks. It provides for protective boxes for meter connection blocks and provides a box adaptable for meters of different types. Claim 4, here sued on, reads as follows:

"4. In combination with a meter casing, a box having an open end wherein said meter casing enters partly to close the same, and in said end a detachable frame secured to said box and co-operating with said meter casing to complete the closure of said end."

There are two patents of the prior art referred to as anticipation: Grady, No. 1,024,931, and Slocum, No. 832,508. These boxes provide special means for making a closed connection to the meter, so as to minimize fire risk and to prevent the stealing of current by making connection to a service wire which is outside of the meter. The construction provides for having the end of the meter casing enter the switch box. The claim sued on covers the combination of a meter casing and a particular box. The appellant supplies the box which is to be installed in connection with the meter in such a way as to present a complete combination, although it does not supply the meter.

[4] The claim of the appellee is for contributory infringement. Where a defendant furnishes one part of the patented combination, intending that it shall be assembled with the other parts thereof, and a complete combination used or sold, such action is infringement on the completed combination. There is no novelty claimed in merely closing the box. The novelty is in the additional provision for permitting the meter casing to enter the box.

The slide is designed to receive the fastening lug of the meter casing. Grady shows the meter casing butted against the end of the neck, which constitutes part of the box. The box and the casing are separated from each other by space, the lower end of the box is the lowermost part of the box plate in the long space between the meter casing and the box, through which the connecting wires must pass. There is the neck of frusto-pyramidal form. The neck is "adjustable to fit nearly upon the top of the meter."

Palmer eliminates this long neck by bringing the meter and the box close together, with the former entering the latter. The cut-out plate appellant supplied with its box performs the same function as the form called for in the Palmer claim; that is, it completes the closure of the box. That the meter casing enters the box supplied by the appellant only to a slight distance is not important. What the appellant constructs is the equivalent, under the rule of the range of equivalents, which should be allowed to this appellee. Dowagiac Mfg. Co. v. Brennan (C. C. A.) 127 F. 143.

We think this patent discloses invention in fitting the service entrance switch box to the meter by having the latter enter the box to partly close it and then completing the closure by separate structure. Slocum's patent does not have the meter casing of Palmer, nor the box with the meter casing entering it, nor, indeed, a detachable frame which, with the meter casing, completes the closure of the end. There is testimony that such box of Slocum is not adapted for use as a case for meter connection boxes. Nothing is put in such boxes except wiring; only connections from several lines of wires where it is desired to enter to connect them. They do not carry terminals, nor connecting screws or fuses. We think this patent valid and infringed.

[5] The Palmer patent, No. 1,036,317, granted August 20, 1912, on application filed June 6, 1910, is for a protective casing for electric meters and cut-out devices electrically connected thereto, and consists merely of a structure whereby the locking, in place of the cover, permits access to the connections of the meter and the cut-out block, and to a switch interposed in these connections whereby the meter and the portion of the casing inclosing the same may be removed and the cut-out device still remains protected by the remaining portion of the casing, whereby the switch may be manipulated while the casing is in place.

Claim 1 is relied on and reads as follows:

"1. In combination with a base, a U-shaped frame, means within said frame for securing the same to said base, a sliding piece closing the open side of said frame, a cover for said frame extending over the outer edge of said sliding piece, and means for locking said cover to said frame."

The patent to Swallow & McCoy, No. 927,384, shows a box which we think is like, in all respects, to this patent, except that it has an open end filled in by the meter. We think this inventor did no more than to make an end of the box removable. This does not amount to invention. Swallow & McCoy's patent is an anticipation. That part of the decree holding this patent valid is reversed.

[6] The appellee has secured a new meter service entrance switch box, which, in so far as the several patents which we hold valid and infringed are concerned, constitutes an improvement in the art. The advantages thus secured to it have been copied by the appellant, as we have indicated, and warrant a decree against it. Hobbs v. Beach, 180 U. S. 383, 21 S. Ct. 409, 45 L. Ed. 586. Much is made in the argument by the appellant that the references called to our attention show anticipation, if there be slight modifications. Such modifications of previous apparatus will not constitute anticipation of a combination such as the appellee has devised by the process of reorganization or combination, even if, after such efforts, they accomplish the function performed by the device of the patents in suit. Stebler v. Riverside Asso. (C. C. A.) 205 F. 735. In the three of the four patents which we have sustained, and held to be infringed, we think there has been practical utility of the advantages indicated and inventive thought displayed. This is the type of invention which the courts protect. Ohio Rake Co. v. Bucher & Gibbs Co. (C. C. A.) 266 F. 891.

The decree will be modified, by holding the Murray patent valid and infringed as to claim 5; the Palmer patent, No. 993,099, valid and infringed as to claim 3, and not infringed as to claim 6; the Palmer patent, No. 1,028,268, valid and infringed as to claim 4; the Palmer patent, No. 1,036,317, invalid for want of invention.

The decree is modified accordingly.

L. HAND, Circuit Judge (dissenting in part). I dissent as to claim 3 of the first Palmer patent, which seems to me not infringed, so that I have not considered its validity. I think that the defendant has no channels

at all; certainly not four channels, each containing two terminals. Moreover, it seems to me that the claim demands that all the terminals of one series shall have contact surfaces, which they have not. I can see no room in such a patent for the doctrine of equivalents. Otherwise I concur.