## W. N. MATTHEWS CORPORATION v. ALLIANCE SECURITIES CO.*

### No. 8711.

Circuit Court of Appeals, Eighth Circuit.
April 5, 1930.

Delos G. Haynes, of St. Louis, Mo., for appellant.

Samuel E. Darby, of New York City (Rodney Bedell, of St. Louis, Mo., on the brief), for appellee.

Before STONE and BOOTH, Circuit Judges, and REEVES, District Judge.

STONE, Circuit Judge.

From a decree adjudging infringement of Hopkins patent, No. 1,196,691 (August 29, 1916), defendant brings this appeal. .

The Hopkins patent is entitled "Means for Distributing Liquids" and relates to "improvements in air-controlled means for applying liquids to surfaces." He states that the invention "is particularly designed as an air brush for the purpose of spraying paint upon surfaces to be painted." He sets forth the difficulties in a paint air brush as being different densities in material used requiring different air pressures to force the material from the container to the spray nozzle and different surfaces (to be sprayed) requiring corresponding difference in the air pressure

*Opinion modified, see 41 F.(2d) ——.

at the nozzle to meet varying working conditions in order to secure the best results.

He sets forth that in existing devices "the only air control had is that which passes out with the material through the distributing nozzle," and that "the pressure used in the outer nozzle has always been the same as that passing through the material receptacle and out of the material nozzle." The stated defects of this existing construction is "a great deal of waste of material" and a lack of "accurate and desirable control of the spray of material."

To meet the above difficulties, and to overcome the defects of existing devices, his device furnishes means of regulating the air pressure on the material and the air pressure direct to the nozzle entirely independent of each other, thus enabling the operator to adjust each of these pressures to the requirements of the particular material being used and of the surface to be painted. He contemplates the use of but one air storage tank and gets his result by branching two air lines (one to the material tank and one direct to the nozzle) therefrom, and by placing in each of said branches a valve regulating the pressure desired in the particular branch. His patent is for a combination containing many other details, but the heart of his plan is this regulation of each of these two air streams *independently of each other*.

Appellant contends that the prior art has anticipated every element of this combination and, also, the arrangement of elements in this combination. An additional contention of somewhat smaller range is that, if the first contention that the entire patent is anticipated is unsound, then such prior art and the file wrapper have very narrowly limited the scope of this patent.

Without close examination, it may be taken for the purposes of this case that the idea of spraying paint from a nozzle by compressed air pressure was old. Also, that many, if not all, of the separate elements were known. The question here is whether this patent plan of independent control of the two streams (paint and air) to the nozzle appears earlier, because that is the claimed novelty in this device.

The patent most strongly relied upon as anticipatory is Collings and Weatherhead No. 412,875, issued October 15, 1889. This patent is for "Apparatus for Burning Petroleum." Its purpose is to afford a safe and sure way of conveying petroleum from a storage tank to a furnace burner, and of there supplying oxygen in the quantities re-

quired for most perfect combustion of the oil as it issues from the burner: The operation is to have compressed air enter the burner back of the oil inlet and thus blow the oil out of the reduced outlet at the front or flame end of the burner. There is one air storage tank from which issue two pipes. One of these carries air direct to the burner, while the other goes into the oil tank and furnishes the pressure which forces oil therefrom to the burner. Intermediate each of these lines is a regulating valve which controls the pressure in each line independently of the other line. This patent is dangerously near an anticipation, if it be properly citable. The contention revolves around the point of whether the two devices are in the same art or closely analogous arts. Undoubtedly, both are air liquid sprays. The spraying of liquids and of fine particle solids covers a very broad field of use—from a diminutive medical spray which nebulizes thin liquids to the large oil burner or the large sand sprayers used to clean hard surfaces. In a sense, the various uses of compressed air admit of grouping. In a sense, material spraying nozzles (operating by air, steam, gravity, or otherwise) are a class. Various classifications are possible into different "arts," and each capable of more or less justification. In patent investigation, something more and additional to naturalness of classification is required. The inventor is held to know all that is present in "the art" at the time his invention enters. This presumption is conclusive and necessary. Therefore, the importance in determining the definition of or the limits of "the art." The theoretical but natural attitude of mind of the inventor is a good guide. It is not necessary to protect the rights of prior discoverers nor the public, nor is it fair to the inventor to require him to know more than a complete search by him would have revealed. Therefore, it is important to know what he was searching for. Hopkins was interested in a paint air brush. It is true that, after he had filed his application in the Patent Office, he sought to broaden his purpose and discovery from "an air brush for distributing liquids" to "means for distributing liquids," but this was hardly effective, since his device is rather definitely outlined in the specifications. His problem was made by the conditions and difficulties pertaining to paint air brushes. He was trying to meet those conditions and to overcome those difficulties, and those alone. Had he searched the existing knowledge upon those matters he would have found the prior art pertaining thereto. When to this is add-

ed the rule that discovery merely of a new use of an old article is not invention, it would seem sufficient protection had been accorded the existing art and the public. Applying this reasoning, it would seem that the Collings & Weatherhead patent would lie outside "the art," because that patent was in an industry entirely unrelated to painting. Also, certain changes of construction were necessary to adapt the Collings & Weatherhead patent to use as a painting air brush.

Appellant seems to recognize this danger to this citation. To avoid such, he cites Bryce No. 520,766 (June 5, 1894) for a "Spraying Machine." This patent is cited as an anticipation in and of itself and also to "bridge" the space between the art of the instant patent and that of Collings & Weatherhead—thus to so broaden "the art" as to include Collings & Weatherhead. As to the latter-cited purpose, the reasoning is that the Bryce spray may be used, according to the statements in the specifications, "as a sprayer of paint," in various other stated uses and "to inject under air or other vapor pressure, solid and liquid fuel into a furnace." In short, if an inventor reveals a device which he deems mainly useful as a paint spray, but which he "says" may be used for a fuel feed spray, then such statements in the specifications will enlarge "the art" for all subsequent inventors of paint or of fuel sprays. We do not follow such reasoning. Possibly an inventor may broaden "the art" as to *himself* by evincing actual incursions into other fields, whence he has brought back some useful suggestions, but that some one else should be permitted to broaden "the art" for all who come thereafter is not appealing to us. Using the same reasoning, if an inventor ambitiously catalogued, in his specifications, all manner of uses of compressed air to distribute substances, that act alone would thus broaden "the art" to limit all future inventions using compressed air—in fact, Bryce does expressly thus cover "fine dry solids, or liquids, or both, by the force of compressed vapor" and mentions several specific uses.

As an independent citation, the Bryce patent is in many respects similar, but there is a difference in controlling valves which is important when the purpose of use is considered. Bryce had the imperfect germ of the idea which Hopkins ripened into practicality.

Other citations are Fisher No. 584,864, Quest No. 627,877, Wallwork & Wells No. 577,522, Sala No. 927,881, Burdick (British)

No. 18,265 of 1899, Champ No. 611,892, Von Dohn No. 885,027, James No. 938,489, DeVilbiss No. 1,045,266. Of these, Champ, Von Dohn, and DeVilbiss are of elements only. In the others there is no entirely independent air regulation. In several (as Burdick and James), one of the lines is subject to regulation, but the other either is without regulation or subject to regulation which *might* affect the other—this is true where there is a regulating valve back of the branch and a valve on only one of the branches.

There are several citations of "Prior Art Literature." They are the articles from technical magazines dealing with the development and uses of compressed air and, also, with several paint spraying machines. None of these are anticipatory.

Our conclusion is that there is no anticipation shown by patents or literature, and the patent is valid.

Four devices are involved as being infringements. These are known as C 4, C 5, C 6, and C 7. Appellant concedes that C 4 and C 5 are infringements, if the patent is valid. Validity established, the contest revolves around constructions C 6 and C 7. In connection with such issue it is important to determine the scope of the patent. An examination of the patent and of the file wrapper leaves no doubt that the claimed novelty of this invention lay in the entire independence of control of the air stream to the material container and of that direct to the nozzle. Each of these streams performed different functions, and regulation depended upon different considerations as to each. The purpose of the container stream was to force the material to the nozzle, and the problem was to provide pressure sufficient therefor. Obviously, the amount of such pressure depended upon the density of the material and the distance it was to be lifted —the problem was to overcome gravity. The air stream direct to the nozzle had no contact with the material until the material was delivered at the nozzle. Its office was to convert the material from a stream into a spray. The character of spray desired was, naturally, dependent upon the density of the material, the kind of surface to be painted, and the effect desired. Such considerations were entirely independent from those affecting the air stream which had forced the material to the nozzle from the container. Obviously, the most perfect results could come only from completely independent regulation of each of those two air streams. This was what Hopkins designed to do and so stated.

His entire idea is concisely expressed in the patent as follows:

"Heretofore the pressure used in the outer nozzle has always been the same as that passing through the material receptacle and out of the material nozzle *17* and this prevented as accurate and desirable control of the spray of the material as can be had by the use of my improved structure. This advantage, as can be seen, is gained by the branching of the air line *2* and the placing of air reducers on each branch by means of which each independent pressure can be controlled, one for the receptacle and one for the air passing through the nozzle *18*."

It is very evident that he has stated the solution correctly as being "by * * * the placing of air reducers *on each branch*." In no other way can the entirely independent regulation be secured and the most desirable result achieved. Earlier devices (Fisher for instance) had a semi-independent regulation, where there was a regulator between the air tank and the branching and another on only one of the branches—within certain obvious limits there might be independent regulation, but those limits existed. Hopkins' plan purposed and did do away with those limits upon the independence of regulation. The contention of Hopkins in the file wrapper shows no deviation from or expansion of the above purpose. In his affidavit before the Examiner he says:

"My idea has been and is that the use of wholly independent air pressures direct and low, over which the operator has absolute and complete control and can adjustably regulate the pressure under which the paint and material is delivered, and also, independently, regulate the air pressure to atomize, is the only device or idea, by which the desired result can be obtained. In practice on different kinds of work, different materials are required and must be handled through the same machine. That is to say, a paint spraying machine, to be successful, must be able to handle paint mixtures of different consistencies or specific gravities and the suitable pressure for delivery of the paint mixture which is thick and heavy would not do for a material which is light and thin. Moreover, if the same pressure is used to atomize the paint as is used to lift it, no successful result can be obtained, because the waste or scattering of the paints and materials is fatal to a successful operation; for that reason, it is absolutely essential that the control be adjustable and absolute and my machine is the first in which this idea has ever been applied."

In his brief before the Examiners in Chief, he says:

"It is further submitted that applicant has made a most important and valuable invention, which resides in the idea of independently and absolutely controlling the two pressures employed in the use of the machine, namely, first, the pressure under which the paint material is raised and applied at the point of application, and, second, the pressure of the air blast employed to atomize the paint material." The same thought appears in his brief before the Commissioner. The patent itself is plain, and the file wrapper is useful only to make definite any generality of language in one or two of the claims. The patent is for and is confined to independent regulators—one on the direct air line to the nozzle and one on the air line to the material container. Whether those two lines are branches of a single air line coming from the air tank or issue as separate lines from the tank is immaterial—the patent claims cover either of such constructions—but the essence is the location on each line of the separate regulators.

Appellant contends that its constructions C 6 and C 7 do not infringe because neither has these independent regulators. Each of these constructions has a regulator between the air tank and the branching of the lines, and another regulator on the branch air line going to the material container. There is no regulator on the branch air line direct to the nozzle. If this construction were all, there would, obviously, be no infringement. It is not all. Appellant advertises and sells a separate appliance designed to be attached to and used with the above construction. This attachment is to be placed in the branch direct to the nozzle. It is a pressure regulator. Also, the regulators on the air branch to the container are, when sold, sealed. The seal can be easily broken. Parsons Non-Skid Co. v. Atlas Chain Co., 198 F. 399 (C. C. A. 2); H. Channon Co. v. Parsons Non-Skid Co., 203 F. 862 (C. C. A. 7); Sandusky F. & M. Co. v. De Lavaud, 274 F. 607, 610 (C. C. A. 6). The purchaser of the device and of the attachment could easily and is clearly expected to put the two together [Metropolitan Device Corp. v. Williamsburg El. S. Co., 19 F.(2d) 442, 446 (C. C. A. 2); Westinghouse E. & M. Co. v. Precise Mfg. Corp., 11 F.(2d) 209, 211 (C. C. A. 2); Pyrene Mfg. Co. v. Boyce, 1 F.(2d) 185 (C. C. A. 3); Wilson v. Union Tool Co., 265 F. 669, 672 (C. C. A. 9); Dental Co. of America v. S. S. White Dental Mfg. Co., 266 F. 524 (C. C. A. 3); Kreplik v. Couch Pat-

ents Co., 190 F. 565, 567 (C. C. A. 1)]. He would then have a "chinese copy" of the Hopkins device. The sale of the constructions C 6 and C 7 of the attachment is an obvious infringement, so intended by appellant.

The decree should be and is affirmed.

BOOTH, Circuit Judge (concurring).

I concur in the foregoing opinion, with grave doubt, however, as to the validity of the patent in question, in view of the United States patent to Collings and Weatherhead, No. 412,875, October 15, 1889, which I think is properly citable as part of the prior art.