## MURRAY–OHIO MFG. CO. v. E. C. BROWN CO.

### No. 8762.

Circuit Court of Appeals, Sixth Circuit.

Jan. 6, 1942.

Albert R. Golrick, of Cleveland, Ohio (Fay, Macklin, Golrick & Williams, Albert R. Golrick, and Leslie Nichols, all of Cleveland, Ohio, on the brief), for appellant.

John B. Hull, of Cleveland, Ohio, for appellee.

Before SIMONS, HAMILTON, and MARTIN, Circuit Judges.

SIMONS, Circuit Judge.

G. E. Bullock of the plaintiff-appellee company, designed à velocipede. The patent office, upon his May 1, 1934, application, gave him patent No. 1,984,916, on December 18, 1934, for a "velocipede frame construction." The District Court, in an infringement proceeding, held all of its claims in suit, to wit: 8, 12, 14, 17, 18 and 24, valid and infringed by three structures made and sold by the appellant. This appeal followed.

The history of the alleged invention, as narrated in brief and argument of the appellee, discloses that Bullock set out to modernize the design of the conventional velocipede in response to the then current fashion of streamlining mechanical and other structures. He also aimed to reduce weight without sacrificing strength. The velocipedes then upon the market were constructed generally with heavy iron pipe backbones and small step-plates over their rear axles. Bullock provided a thin walled tubular backbone of large diameter with a sheet metal platform over the rear axle in place of the conventional step-plate. To

gain rigidity and strength he passed the rear end of the backbone through the platform and welded platform, backbone and rear axle together, producing in the language of appellee's counsel, "a trussed construction." It is claimed that he achieved a reduction in weight of from 2½ to 5 pounds over conventional vehicles, and that when the commercial velocipedes were put upon the market in the spring of 1934, they met with commercial success to such extent that the plaintiff's entire year's production was sold within 90 days after introduction. It is also claimed that six suits thereafter brought against infringers have now produced four consent decrees and one decree for recovery of damages for infringement.

The patent recites a multitude of objectives sought through the new and improved construction. They include increase in strength, through utilization of a single piece tubular backbone member of large diameter. This also permits the seat and fork support to be mounted therein and provides sufficient space within the tubing for electrical wiring to extend from one end to the other. A novel seat and support adjusting means is said to be provided, and the backbone is extended forwardly of the fork support to permit the mounting of a headlight thereon. A novel platform at the rear is claimed attached to the backbone in a novel manner, and uniting the platform and backbone to the rear axle of the structure is said to be new and to achieve meritorious results.

■ Of the claims in suit little need be said about 12 and 24. Claim 12 covers a combination of elements as a unitary coordinated structure which includes therein the extension of the backbone member forwardly of the fork to support a headlight in a substantially horizontal position, while 24 includes, in addition, the headlight itself mounted in the support. The two claims are clearly invalid as disclosing an aggregation. Reckendorfer v. Faber, 92 U.S. 347, 357, 23 L.Ed. 719; Lincoln Engineering Company v. Stewart-Warner Corp., 303 U.S. 545, 549, 550, 58 S.Ct. 662, 82 L. Ed. 1008; Toledo Pressed Steel Co. v. Standard Parts, Inc., 307 U.S. 350, 356, 59 S.Ct. 897, 83 L.Ed. 1334. There is no co-operative function between the headlight of a velocipede or its support and other elements of the device. Indeed, it would be difficult to discover in the whole realm of patents adjudicated invalid for failure to disclose a true combination, a structure more closely analogous to the aggregated elements adjudicated in the Faber case (pencil and eraser). Furthermore, if combination could be perceived in backbone and headlight, such combination is clearly anticipated in the disclosures of the British patent to Bothwell, No. 107,188 (1917).

■■ There remain to be considered in respect to validity, claims 8, 14, 17 and 18, printed in the margin.[1] Taking claim 17 as typical of the more inclusive grouping of elements, it is for a combination of a hollow backbone member and a bearing member of smaller cross-section extending through it, in which a fork is swiveled for the support of its forward end, together with an axle projecting through the tubular backbone member near its other end for the support of the backbone at the rear.

---

[1] 8. A platform for velocipede frames having a rear axle, a curved flange formed at the front and rear of said platform, sides closing the end of said flanges and having the rear axle extending therethrough and fastened thereto to support the platform on the outer ends of said axle, a backbone member projecting through said platform and supported on said axle, said platform being fastened to said backbone member to have said backbone member support said platform intermediate the ends thereof.

14. In a velocipede frame construction, the combination of a hollow backbone member, an axle projecting through and anchored in the end of said backbone member, a platform with curved front and rear walls to enclose the axle between them, said platform having folded ends to form vertical sides for the axle to pass therethrough and support said platform.

17. In a velocipede frame construction the combination of a hollow backbone member, a bearing member of smaller cross section than the backbone member and extending through said backbone member near one end thereof to have a fork swiveled therein for the support of the forward end thereof and an axle projecting through the tubular backbone member near the other end thereof for the support of the backbone member at the rear thereof.

18. In a velocipede frame construction as set forth in claim 17 with a platform with curved front and rear walls, said platform being fastened to said backbone member above said axle and supported on the axle at the outer ends thereof.

In an effort to sense invention in this combination of elements, a consideration of the prior art at once discloses to us that there is nothing new in the concept of a single-reach tubular backbone structure in vehicles of this class, attached rigidly to a rear step or platform structure, as exemplified in the patent to Marqua No. 1,-778,116, or in Gill, No. 1,837,541 (1930). There would seem to be nothing patentably new in providing a bearing member of small cross-section passing through a backbone of larger diameter for the swiveling therein of a fork or seat support, since this is but a mere reversal of the parts found in the prior art where bearing members of larger diameter encompass a backbone member of smaller diameter. There would seem to be nothing of patentable novelty in enlarging the diameter of the backbone to admit of thinner walls even though we give but scant attention to the contention that the patent is invalid for failure to disclose the preferred diameter or the permissible limits of wall thickness which the inventor thought was important in the materialization of his concept. Finally, no invention can be perceived in the elongation of the step-plate of the prior art so that it may now be denominated a "platform," or in running electrical wiring through a hollow tube.

Such novelty as the patent possesses must therefore reside in its rear end construction. This is best detailed in claims 8 and 17, claim 8 being specifically directed to the platform. Its elements include curved flanges at the front and rear, sides closing the end and having the rear axle extending therethrough and fastened thereto to support the platform on the outer ends of the axle, the backbone member projecting through the platform and being supported on the axle and the platform being fastened to the backbone member so as to be supported intermediate its ends.

Conceiving that a thin walled backbone for a tricycle may require expedients in addition to those disclosed by conventional vehicles of this type for strength and rigidity, the patentee fastened the three elements of his rear construction together, preferably, as the specification discloses, by welding them into a unitary structure. In the present state of the mechanical arts it is difficult, if, indeed, not impossible, to sense invention in this expedient. It would seem to be the obvious response of routine mechanical skill to the need once that had been perceived. Even were we unaware of the higher standard now demanded for invention by the decisions of the Supreme Court in recent years, noted by the court of the Second Circuit in Buono v. Yankee Maid Dress Corp., 77 F.2d 274, 276, and by us in Cleveland Trust Co. v. Schriber-Schroth Co., 108 F.2d 109, 112, it would seem to be obvious that the welding or otherwise fastening the assembly together for strength and rigidity would be within the compass of expected mechanical skill.

Once again, as in Lempco Products v. Timken-Detroit Axle Co., 6 Cir., 110 F.2d 307, 309, we are not oblivious to the rule that there may be a new combination of old elements, but as it was there said, and as it often had been said before, there must be recognition of invention in the thought of combining them. Nor do we overlook the claim that the commercial success which followed the introduction of the patented velocipede, should weigh heavily upon the side of a recognition of invention. The record is not clear as to the quality of the device that produced success, and it is to be noted that the patentee applied for and obtained design patents thereon, not here involved, and it may well be, though we do not so hold, that streamlining to meet popular demand was as much responsible for the acceptance of the patented vehicles as the claimed novelty of their structural elements. The mere yielding of alleged infringers evidenced by the consent decrees, and successful litigation not determined upon its merits, give little support to an inference that invention is disclosed. This we have noted before. Firestone Tire & Rubber Co. v. United States Rubber Co., 6 Cir., 79 F.2d 948, 954, cited with approval in Toledo Pressed Steel Co. v. Standard Parts, Inc., supra. Our conclusion is that the claims in suit are invalid.

It results that the decree below is set aside and the cause remanded to the District Court with instructions to dismiss the bill.