Modified and enforced.

### LEMPCO PRODUCTS, Inc., et al. v. SIMMONS.

### No. 9443.

Circuit Court of Appeals, Sixth Circuit.

Jan. 24, 1944.

William E. Chilton, of Cleveland, Ohio (Horace B. Fay and William E. Chilton both of Cleveland, Ohio, on the brief), for appellants.

Ralph Kalish, of St. Louis, Mo. (Ralph Kalish, of St. Louis, Mo., Frank Harrison and Squire, Sanders & Dempsey, all of Cleveland, Ohio, on the brief), for appellee.

Before HICKS, SIMONS, and MARTIN, Circuit Judges.

SIMONS, Circuit Judge.

The present patent infringement suit involves claims 1, 11, 12, 14, and 15 of Miller Patent No. 1,949,971, issued March 6, 1934, upon an application filed March 17, 1930. The defenses were invalidity and lack of invention. The court dismissed the appellants' bill, conceiving the claims in suit to be invalid. There was also a finding of infringement based upon an assumption that infringement was conceded. This concession was, however, limited to claim 1. The issue need not concern us because of our agreement with the court below upon the question of validity.

The patent relates to a gauge for measuring the outside diameter of an automobile brake shoe and the inside diameter of the brake drum in order to determine their concentricity. More particularly, the invention is directed to the provision of what may be termed an adapter in the form of a bushing capable of adjustment so that the tool may be used with wheel spindles or axle shafts universally, regardless of variation in their form or size. The inventors who say that the adapter forms the subject matter of their invention, explain that it comprises essentially a sleeve having an interior diameter of sufficient size to be placed over any one of the variously sized axle shafts or spindles ordinarily encountered, and that rotatably mounted upon the sleeve are rings having exterior bearing surfaces designed to fit the hub so that the tool can be rotatably mounted thereon. The mounting of the adapter is accomplished by adjustable plungers in the sleeve normally held outward by springs, but in use urged radially inward by annular rings or cams, the cam faces of which are so arranged as to engage the plungers and to impel them inwardly as the rings are rotated.

The adapter may be applied to any axle shaft by placing it over the element, rotating the rings until the plungers are in engagement with the shaft, and then affixed to the shaft by thumb screws or nuts so that the adapter and the axis providing member may be maintained as a unit. The inventors then recite that the brake gauge "may now be slipped over the rings and used in a manner well known to those versed in the art." Except as it is claimed as an element in a combination, the adapter, as a unitary device, is claimed in claim 1 recited in the margin.[1] Its essential features are the radially adjusted members or plungers and the cam means for moving the plungers and holding them in adjustment with the axle. These elements are old. They are shown in a great number of prior art devices such as Muller No. 184,652, for a pipe cutter; Adams No. 303,-784, journal box; Von Boeckmann No. 774,825, self-centering axle lathe; Wahlstrom No. 970,670, chuck or drilling machine; Gydesen No. 1,312,628, lathe chuck;

[1] 1. An adapter device for rotatably mounting a hubbed element on variously sized spindles or shafts, comprising a sleeve, radially adjustable members carried thereby, cam means including a pair of rings disposed on the outside of the sleeve and rotatably movable for adjusting said radially movable members, and bearing surfaces on the exterior of the rings for the reception of the hubbed element.

Wendt No. 1,949,396, winder shaft; Ripley No. 1,717,345, railroad car wheel grinder; Schofield (British, No. 115,983), and an article in the American Machinist for November, 1919, describing a universal chuck to hold heavy castings in a lathe. Notwithstanding the contention of the appellants that this prior art is non-analogous, and the expenditure of printer's ink and learning in distinguishing an adapter from a chuck, it would seem to be clear that the combination of plungers with actuating and holding cams, must have been so familiar to those skilled in the more generic machine art as to have become a conventional mechanical expedient whereby to hold a tool in fixed position upon a cylindrical or tapered spindle. We have often observed that where an art is a specialized development of an older art the offspring is entitled to the previously disclosed useful characteristics of the ancestral estate. Dunham Co. v. Cobb, 6 Cir., 19 F.2d 328; Page Steel & Wire Co. v. Smith Bros. Hardware Co., 6 Cir., 64 F.2d 512, and a mere change in environment is not patentable unless invention may be found in the concept of the adaptation. Willett Mfg. Co. v. Root Spring Scraper Co., 6 Cir., 55 F.2d 858. Besides, much of this prior art is not at all remote, such as the lathe chucks of Gydesen and Schofield and the car wheel grinder of Ripley. Except for one element to be presently considered, the claim reads directly upon the chuck described in the American Machinist.

The appellant, however, contends that the patent in suit adds to the conventional chuck something entirely new to the art, because the annular cam rings have bearing surfaces on which a gauge tool may rotate. To provide such bearing surfaces for the rotation of a tool or gauge can hardly rise to the dignity of invention. This must be so even though we were to ignore the higher standards now set for determining invention than prevailed in an earlier day. Cleveland Trust Co. v. Schriber-

Schroth Co., 6 Cir., 108 F.2d 109, 112. Certainly it required no creative ingenuity to conceive of rotation upon a cylinder of large diameter (the adapter) when rotation upon a cylinder of smaller diameter (the axle) was both conventional and obvious. The recital from the specification already quoted is further expository.

The gauge itself does not constitute the invention since it is covered by two prior Miller patents, Nos. 1,891,185 and 1,898,136. Prior to the present invention the gauge was designed to be mounted upon the axle as a center, and since automobile axles vary in length, diameter, and taper, as many gauges were required as there were axles of differing sizes and shapes. It was the inconvenience and expense of providing gauges of different size that led the inventors to devise the adapter of the patent in suit, which they denominate a "universal adapter," but since its elements are old, both singly and in combination, it is difficult to hold them entitled to a patent however useful the new tool may be.

But though the adapter and the gauge are old, the appellant insists that the combination is new, and urges upon us the rule that a combination may constitute a patentable invention even though the elements of the combination, each considered separately, may be well known in the art. We have paid our tribute to this rule in cases too numerous to cite. In all of them, however, we have found it subject to the qualification that the quality of invention must reside in the thought of combining such elements, even when the combination produces a new result.[2] Lempco Products v. Timken-Detroit Axle Co., 6 Cir., 110 F.2d 307. When, however, old elements are brought together and each performs its function in the old way and does not cooperate with others in producing a new result, the device is a mere aggregation, not a true combination, and so not patentable. Detroit Stoker Co. v. Brownell, 6 Cir., 89 F.2d 422; Murray-

[2] In view of the principle now expounded in Mercoid Corp. v. Mid-Continent Investment Co. et al., 64 S.Ct. 268, decided January 3, 1944, to the effect that supplying an unpatented device for a patented combination, such device being an integral part of the combination with no use otherwise, is not contributory infringement and is governed by Carbice Corp. v. American Patents Corp., 283 U. S. 27, 51 S.Ct. 334, 75 L.Ed. 819, and Morton Salt Co. v. Suppigeur Co., 314 U.S. 488, 62 S.Ct. 402, 86 L.Ed. 363, the query suggests itself whether any combination of old elements may now be entitled to a patent. If, under the circumstances recited, the supplier is not an infringer, is the patentee who integrates a number of unpatented devices into a combination, an inventor? We arrive at no conclusion but await general discussion of the Mercoid decision, and perhaps its clarification by the court.

Ohio Mfg. Co. v. E. C. Brown Co., 6 Cir., 124 F.2d 426; Toledo Pressed Steel Co. v. Standard Parts, Inc., 307 U.S. 350, 59 S.Ct. 897, 83 L.Ed. 1334, affirming our decision in 93 F.2d 336. Moreover, there is absent here the indicia of invention that reside in demonstration of a long recognized problem, of prior effort and failure, and prompt recognition of its solution. On the other hand, it would seem from the almost contemporaneous solution by others, the patentees being but a short step ahead of them, that no great difficulty was encountered. Concurrent solution has been held to indicate lack of invention. Hazeltine Corp. v. General Motors Corp., 3 Cir., 131 F.2d 34. No strong presumption of validity arises from the patent grant since most of the prior art cited in the present suit was not considered in the patent office. Nordell v. International Filter Co., 7 Cir., 119 F.2d 948.

The decree below is affirmed.