**W. E. PLECHATY CO., Plaintiff,**

v.

**HECKETT ENGINEERING, Inc.,**
**Defendant.**

**Civ. A. No. 32034.**

United States District Court
N. D. Ohio, E. D.

Oct. 30, 1956.

Albert R. Teare, Cleveland, Ohio, for plaintiff.

David Ralph Hertz, Cleveland, Ohio, for defendant.

WEICK, District Judge.

In its complaint, plaintiff seeks a declaratory judgment determining the invalidity and non-infringement of United States Letters Patent Nos. 2,264,204 and 2,352,712 owned by defendant and relating, respectively, to the "Method and Apparatus for Reclaiming Metal" and "Recovery and Use of Scrap Steel", and an injunction restraining defendant from claiming that plaintiff's portable magnetic separator infringes said patents.

Defendant, in its answer, pleaded the defense of unclean hands, alleging that plaintiff wrongfully obtained trade secrets belonging to it, and in addition, set forth a counterclaim in which it prayed that its said patents be declared valid and infringed by plaintiff.

Plaintiff has moved for summary judgment on the counterclaim under Rule 56 of the Federal Rules of Civil Procedure, 28 U.S.C.A. on the following grounds:

1. That German Patent No. 600,395 issued many years before the patents in suit to representatives of the same inventor constituted a complete anticipation of said patents,

2. That the patents in suit constituted merely an aggregation of old elements and were not for a true combination,

3. That the owner of said patents did not come into Court with clean hands.

A pre-trial conference was held by the Court. Also an oral hearing was conducted on the motion for summary judgment.

In the consideration of the motion for summary judgment the Court had before it the patents involved in this action, the German patent and translation thereof, the deposition of Eric H. Heckett, affidavits of Albert R. Teare, William M. McGrew, John D. Keller, file wrapper histories of the patents in suit, transcript of the September 26, 1956 oral hearing, brief of plaintiff, brief of defendant, supplemental brief of defendant and plaintiff's reply thereto.

At the threshold of the case, we are met with the contention by defendant, that because of the alleged inequitable conduct of plaintiff in wrongfully obtaining trade secrets of defendant, plaintiff is not entitled to equitable relief.

Plaintiff's complaint is equitable in nature and unclean hands would ordinarily prevent the granting of equitable relief to it. Great Lakes Dredge & Dock Co. v. Huffman, 319 U.S. 293, 300, 63 S. Ct. 1070, 87 L.Ed. 1407; E. W. Bliss Co. v. Cold Metal Process Co., 6 Cir., 102 F. 2d 105; Gordon Johnson Co. v. Hunt, D.C.N.D.O.E.D., 102 F.Supp. 1009.

In this case, however, defendant, by counterclaim, seeks to have patents owned by it declared valid and infringed by plaintiff.

Unclean hands of plaintiff, even if true, would not prevent plaintiff from defending itself against defendant's counterclaim.

Inequitable conduct on the part of plaintiff does not add strength to defendant's patent. It would not validate an otherwise invalid patent.

The alleged unclean hands of plaintiff bears no relationship whatsoever to the transaction whereby the inventor, Heckett, obtained the patents in suit nor does it concern their validity. Moreover, it is in the public interest to have the validity of a questioned patent determined.

It follows that such claim of unclean hands does not prevent inquiry by the Court into the validity of defendant's patents. Bulldog Electric Products Co. v. Westinghouse Electric Corp., 2 Cir., 162 F.2d 994; Buromin Co. v. National Aluminate Corp., D.C.Del.1947, 70 F. Supp. 214; Vanity Fair Mills, Inc., v. Cusick, D.C.N.J.1956, 143 F.Supp. 452.

Defendant rightly contends that in considering the motion for summary judgment it is not the function of the Court to decide disputed issues of fact, but only to determine whether there is an issue of fact to be tried, Toebelman v. Missouri-Kansas Pipe Line Co., 3 Cir., 130 F.2d 1016; Butcher v. United Electrical Coal Co., 7 Cir., 174 F.2d 1003, and that all doubts as to the existence of a genuine issue of fact are to be resolved against the moving party. American Optical Co. v. New Jersey Optical Co., D.C., 58 F.Supp. 601; Hawkins v. Frick-Reid Supply Corp., 5 Cir., 154 F.2d 88; Lewis v. Clarence Coal Mining Co., D.C., 130 F.Supp. 909; Short v. J. R. Watkins Co., D.C., 122 F.Supp. 244.

While courts are understandably reluctant to grant a summary judgment, particularly in a patent case, nevertheless, it is the clear duty of the court to do so where no genuine issue of a material fact has been presented.

In Bobertz v. General Motors Corp., 6 Cir., 228 F.2d 94, 100, certiorari denied 1956, 77 S.Ct. 32 the Court of Appeals affirmed a summary judgment of the District Court, 126 F.Supp. 780, which invalidated a patent. Judge Martin, in delivering the opinion of the Court, said:

"Where there was no genuine issue of material fact presented, this court has affirmed a summary judgment for the defendant in a patent case. Lincoln Electric Co. v. Linde Air Products Co., 6 Cir., 171 F.2d 223. So, likewise, has the Court of Appeals for the Seventh Circuit. Davison Chemical Corp. v. Joliet Chemical, Inc., 7 Cir., 179 F.2d 793, 795. Cf. Leishman v. Radio Condenser Co., 9 Cir., 167 F.2d 890."

Eric H. Heckett was the inventor of the two patents in suit and also of the German patent, which, it is claimed, anticipated them.

The patents relate to the process and apparatus for the reclaiming of metal from the slag refuse of steel furnaces.

The German patent was issued to Eric H. Heckett's German company on July 21, 1934.

In the German patent, the slag to be processed is fed into a hopper (called a feed funnel) and hoisted by means of an endless conveyer and then dropped onto a sloping baffle for the purpose of breaking up the pieces by impact, where it passes onto a shaker feeder. The shaker feeder subjects the material to additional impact treatment, levels and transports it onto a rotating magnetic drum which functions so as to separate the metallic particles from the non-metallic particles and drop them down different chutes. The non-metallic particles drop down the chute onto another endless conveyer where they are conveyed to a refuse pile.

The metallic bearing particles are dropped down a different chute onto a vibrating sieve contained within a drum. Large particles which do not fall through the mesh of the sieve pass into another chute at the far end of the screen where they drop on an endless conveyer for discharge onto a pile where they can be broken up and reprocessed in the apparatus.

The particles which fall through the mesh of the vibrating sieve pass through another sieve and are dropped through a chute onto an endless belt where they flow over a second rotating magnetic drum which effects a further separation of metallic from non-metallic particles.

Patent No. 2,264,204 was issued on November 25, 1941 on an application filed September 9, 1939, and Patent No. 2,352,712 was issued July 4, 1944 on an application filed November 24, 1941.

In Patent No. 2,264,204, the slag is fed through a grate or grizzley into a hopper. The slag is then dropped from the hopper onto a shaker feeder where it

flows to a chain bucket elevator which hoists the material and then drops it onto a second shaker feeder where it flows onto a magnetic drum. Non-magnetic particles pass over the drum and fall into the chute. Metal bearing particles adhering to the drum are carried further and dropped into a different chute. The magnetic drum thus separates the metal bearing from the non-metal bearing particles.

The metal bearing particles may be dropped down different chutes by means of a baffle gate. If it is desired to rework the material it is dropped into a chute where it passes into a rotating drum and is there subjected to impact treatment by tumbling action and it then goes through another chute and is conveyed on the endless conveyer back to the hopper.

By means of the baffle gate the metal bearing particles may be deposited directly in a railway car and the non-metal bearing particles may also be deposited into a car.

Patent No. 2,352,712 shows substantially the same apparatus except no rotating drum. It does have a screen or sieve. The apparatus is mounted on a skid which makes it portable.

The German patent provides for impact treatment of the slag in the following steps:

(a) Dropping the slag from the hoist onto the baffle,

(b) The vibrating action of the shaker feeder,

(c) The vibrating action of the sieve,

(d) Dropping the slag through another sieve onto an endless conveyer.

The patents in suit provide for substantially the same impact treatment in the following steps:

(a) Dropping the slag from the conveyer onto the shaker feeder,

(b) The action of the shaker feeder,

(c) The action of the tumbler drum or sieve.

It was argued that the patents in suit involve process claims in addition to the claims for the apparatus, and that the process claims cannot be anticipated except by an identical process.

The trouble here was that the operation of the apparatus described in the German patent clearly discloses the process which is an integral part of it. Each step in the process is disclosed by the apparatus. The apparatus could not be operated except by following the procedure prescribed in the process.

A comparison of the German patent with the patents in suit reveals that, in addition to an identical inventor, they also have the following common elements:

| Element | Patent No. 2,264,204 | Patent No. 2,352,712 | German Patent No. 600,395 |
|---|---|---|---|
| Hopper or Feed Funnel | x | x | x |
| Endless Conveyer or Hoist | x | x | x |
| Shaker or Vibrator Feeder | x | x | x |
| Magnetic Drum | x | x | x |
| Chute for Metallic Bearing Particles | x | x | x |
| Chute for Non-Metallic Bearing Particles | x | x | x |
| Vibrating Sieve | – | x | x |
| Sorting Drum | x | – | x |

There is nothing new or novel in the patents in suit beyond what was clearly disclosed in the German patent. Any additional steps in the patents in suit would be clearly apparent to a mechanic skilled in the art and did not require inventive genius.

The addition in Patent No. 2,264,204 of a crane apparatus equipped with a magnetic device for dropping a heavy metal ball on slag in order to crush large particles before they are fed into the apparatus did not introduce anything new or novel. Large particles of slag necessarily had to be crushed and reduced into smaller particles in order to use the apparatus involved in either the German patent or the patents in suit and whether the crushing was done near to or away from the apparatus was immaterial. The crushing machine was old.

The wrapper files of the patents in suit disclosed that the German patent had not been cited by the Examiner of patents. Had the Examiner known of the German patent, he most certainly would have cited it against the patents as it would have been his duty to do so. Instead, Eric Heckett executed and filed in the Patent Office the required affidavits to the effect that his invention had not been patented in any foreign country and that no application for patent had been filed by him or his representative in any country foreign to the United States.

Because the German patent was not disclosed to the Examiner or considered or cited by him, no strong presumption as to the validity of the patents in suit can arise from the granting of the patents. Lempco Products, Inc. v. Simmons, 6 Cir., 140 F.2d 58.

The rule as to anticipation by a foreign patent was well-stated in Allied Wheel Products, Inc. v. Rude, 6 Cir., 206 F.2d 752, 759, where Judge McAllister said:

"The rule, however, is that where a foreign patent has been granted, it may negative novelty in a domestic patent thereafter issued; and a foreign patent may also be considered in determining whether a later patent in this country partakes of the quality of invention. For it has been held that, as to foreign patents, they are of just as much force and effect as domestic patents in constituting an anticipation of a patent. Girard Trust Co. v. Schwartz-Gilbert Co., D.C.N.Y., 36 F.Supp. 218. A foreign patent is competent to anticipate a domestic patent if it teaches the invention with sufficient clarity to enable those skilled in the art to understand its nature and to carry it into practical use without further experimentation."

There is also much force in the argument of plaintiff that the elements comprising the invention constitute an aggregation and not a true combination. Great Atlantic & Pacific Tea Co. v. Supermarket, 340 U.S. 147, 71 S.Ct. 127, 95 L.Ed. 162; General Motors Corp. v. Estate Stove Co., 6 Cir., 201 F.2d 645, certiorari denied 346 U.S. 822, 74 S.Ct. 37, 98 L.Ed. 348; Lempco Products, Inc. v. Simmons, supra; Cleveland Punch & Shear Works Co. v. E. W. Bliss Co., 6 Cir., 145 F.2d 991; Ranco, Inc. v. Gwynn, 6 Cir., 128 F.2d 437; Goodwin v. Carloss Co., 6 Cir., 116 F.2d 644.

It seems clear to me that the German patent clearly anticipates both patents in suit. By reason of the disclosures in the drawing, description and claim in the German patent, there is no novelty or invention involved in the patents in suit.

The affidavits submitted by defendant cannot change what the German patent clearly discloses.

No genuine issue as to a material fact has been presented.

If the apparatus shown and described in the German patent had been made and used by plaintiff, it would have constituted a clear infringement of the patents in suit. It must, therefore, be held that the German patent anticipated the patents in suit. Commercial Mfg. Co. v. Fairbank Canning Co., 135 U.S. 176, 10 S.Ct. 718, 34 L.Ed. 88.

The patents in suit are invalid because of anticipation by the German patent. It is, therefore, unnecessary to determine the issue of infringement. Bobertz v. General Motors Corp., supra.

In no event could defendant obtain equitable relief on its counterclaim because of the failure of the inventor, Eric H. Heckett to disclose the German patent in his affidavits filed in the Patent Office. E. W. Bliss Co. v. Cold Metal Process Co., supra; General Excavator Co. v. Keystone Driller Co., 6 Cir., 62 F. 2d 48.

It follows that the motion for summary judgment in favor of the plaintiff on the defendant's counterclaim should be granted and an order may be prepared accordingly.