**DEERING MILLIKEN RESEARCH COR- PORATION, Appellant,**

v.

**ELECTRIC FURNACE CORPORATION, Appellee.**

No. 13471.

United States Court of Appeals Sixth Circuit.

Dec. 15, 1958.

John F. Neary, Jr., New York City, Granville M. Brumbaugh and John F. Neary, Jr., of Brumbaugh, Free, Graves & Donohue, New York City, Noone & Noone, Chattanooga, Tenn., on brief, for appellant.

Jac Chambliss, Chattanooga, Tenn., Jac Chambliss, of Chambliss, Brown & Hodge, Chattanooga, Tenn., Lamont Johnston, Chattanooga, Tenn., on brief, for appellee.

Before SIMONS and MILLER, Circuit Judges, and JONES, District Judge.

SIMONS, Circuit Judge.

The appellant sought in the District Court an injunction restraining infringement of Ingham Patent No. 2,-672,895 on a "filling grate for looms" and for damages because of infringement. The patent in suit was issued on March 23, 1954, upon an application made September 14, 1953. It contained four claims of which claims 1, 2 and 4, printed in the margin, are in issue. The District Judge dismissed the complaint upon a motion for summary judgment on the ground that there was present no genuine issue of any material fact and on the ground that the claims in suit were invalid because they disclosed no invention, in view of prior art.[1]

The basic issues are whether the improvements claimed to have been made by Ingham in automatic looms of the type described and claimed discloses the quality of invention, and whether or not there were material facts to be developed upon trial which would preclude final disposition of the case by the entry of a summary judgment of dismissal. For determination of these issues it becomes necessary, as is usual in such cases, to understand the prior art as it is pre-

---

1. In a filling detecting device for a loom said device comprising a grate and a pivoting fork having a number of tines designed to cooperate with said grate by pressing a filling yarn against the face of the grate, the fork thereby being pivoted to indicate the presence of said filling yarn, and by passing said tine through the openings of said grate when no filling yarn is present, the fork thereby not being pivoted to indicate the absence of a filling yarn, the improvement which comprises a grate having external surfaces composed of a synthetic polymeric material selected from the group consisting of polytetrafluoroethylene and polytrifluorochloroethylene.

sented by appellant's narration and the affidavits and exhibits filed in the cause by both litigants, the appellee basing its defense upon alleged prior publications and its own alleged prior uses. No patent office history of the art is presented. The appellee bases its challenge to the validity of the claims upon certain letters from its files to prospective customers, a stipulation that that may be done in lieu of calling witnesses, and affidavits including that of its president, Livingstone, which in certain aspects is challenged by appellant's counter affidavits.

The appellant thus describes prior art automatic looms for weaving cloth. An element of these looms is a device which senses the presence or absence of the filling or woof yarn. If the filling yarn is present, the sensing device functions in a way to allow the loom to operate. If the filling yarn is absent, the device must function in a way either to stop the loom or to cause a new bobbin of filling yarn to be inserted into the mechanism. The device by which this sensing mechanism is effected is a combination of a slotted grate and a pivoted fork and is known in the art as "a filling grate". It is so positioned that the filling yarn passes in front of it and when the grate, yarn and fork are in their proper relationship the loom continues to operate. When the filling yarn is absent, it no longer keeps the tines of the fork out of the slots in the grate. The tines thereupon enter the slots and actuate a responsive mechanism which either stops the loom or causes a fresh filling bobbin to be inserted therein. However, when foreign matter, such as lint, clogs the slots and prevents entry of the tines, continued operation results in a defective weaving with consequent loss to the weaver. It is asserted that this presents a serious problem to the industry and numerous unsuccessful efforts were made to solve it.[2]

Ingham in his specification, after pointing out that the problem of lint collecting on the filling dectector grates has been present since the advent of the automatic loom, asserts that it is the object of his invention to eliminate the necessity for manually brushing the accumulations of lint from filling detector grates by providing a grate on which lint does not accumulate and asserts that this object, as well as others, is accomplished by an improved grate with exterior surfaces composed of a polymeric material, and that it has been found that lint does not adhere to grate surfaces composed of these materials with sufficient tenacity that it cannot be removed by the routine air-hosing operations performed in the mill; that looms so equipped can be operated for weeks, or even longer, without the necessity of brushing the lint from the openings in the grate. In describing an embodiment of his invention, he says the loom frame on which the base of the filling detecting device is secured, its mounting on the base, the filling fork slide free to move longitudinally, the filling fork slide operatively connected for stopping the loom, the lay which moves back and forth with respect to the base equipped[4] with reed and shuttle, the filling fork slide provided with a longitudinally extended slot, the slot the gooseneck and its actuating means, the well or groove in which the grate is partially positioned and the means for moving the gooseneck in the slot are all conventional.

Thus is presented here a loom construction consisting mainly of old and well known elements to which is added an external coating of polymeric material in the categories which are described in the patent and asserted in the claims. What we have, then, is a new combination created by the addition of a plastic which, as explained by the inventor, does not permit the adherence to grate surfaces of undesirable lint which "be-

2. The improvement of claim 1 wherein the grate comprises a metal body having a surface coating of polytetrafluoroethylene.

4. The improvement of claim 1 wherein the grate comprises a metal form with a surface coating of polytrifluorochloroethylene.

deviled" the weavers by increasing the cost of weaving. Our problem is to determine whether upon the facts alleged in pleadings, briefs, exhibits and argument the improvements not merely imparted utility and novelty to the patent but disclosed the quality of "invention." As early as April, 1952, a publication styled "Modern Packaging" called attention to the problem of gummy, sticky or tacky deposits on various types of machines and reported encouraging results with the use of a non-stick plastic, the trade-name of which was Teflon. It described it as a polymeric material within the categories limiting the claims of the patent. On January 9, 1953, the DuPont Company, in a publication entitled "Product Information Service," announced that Teflon was finding increasing use in the textile industry as coating on machinery parts because "practically nothing will stick to it." A similar article was reprinted by DuPont for textile industries in June, 1953, which recites that the principal virtue of Teflon finish is that nothing will stick to it and that it has the unusual quality which makes its application in textile processing almost universally probable, and that various packaging companies listed in "Modern Packaging" for April, 1952, carried the statement that various companies had reported encouraging results with use of the non-stick plastic Teflon in a new economical form of a coating like paint on machine parts. "Most important to this discussion is the fact that almost nothing will stick to it. No known solvent or adhesive will affect it."

In 1952, the appellee sent out a series of letters to prospective customers describing the advantages of Teflon as a coating for machine parts, including textile equipment, and offering to coat loom parts for the precise purpose provided in the patent. While it is conceded that the letters do not definitely establish a prior use by the appellee, they do show without denial that more than a year prior to the application for the Ingham Patent the appellee was prepared,

equipped, and offered for sale, Teflon for the coating of machine parts, including those of textile machinery. To the contention that this was a prior use, the appellant makes reply that the publication "Industry" recites that Teflon cannot be considered as a panacea for all things, since a textile manufacturer experienced trouble with a starch-like material which stuck to cylinder cams. This seems to us quite beside the point. The virtue of Teflon is to be judged by what it does and not by what it cannot do. It may be that its advantages are somewhat exaggerated in the publications relied upon but the argument for the invention describe the improvement made by it in its loom operations and the claims assert it. The appellant but downgrades its patent by contending that its combination will not in every case solve the lint problem.

We perceive nothing in the patented combination that was not disclosed by prior art except the addition to it of Teflon, means common to the generic machine art or within the skill of the routine mechanic. Cuno Engineering Corp. v. Automatic Devices Corp., 314 U.S. 84, 62 S.Ct. 37, 86 L.Ed. 58. Undoubtedly, a less stringent test of the quality of invention has been provided by the Revised Patent Act of 1952, 35 U.S.C. § 282, even though "flash of creative genius" test may not have proved too useful a solution of the problem of patentability since the phrase was first projected by a majority of the Supreme Court. We do not infer, however, that it was the intention of the Congress in the new Act to completely eliminate from patent law, as it has been developed in the courts over the years, the considerations by which invention may be perceived, or found wanting, either in pioneer or improvement patents.

In the long history of patent litigation, in this and other courts, the search for the inventive quality in patents has often been considered and reevaluated before validating a grant of monopoly to an alleged inventor. We have given careful thought to the rationalization by

which invention is perceived, or found wanting, in a long series of adjudications to the end that a patent must possess not only novelty and utility but must demonstrate an exercise of the inventive faculty. The adaptation of a machine for a new use does not entitle one to a patent if the new use is suggested by analogous art and invention may not be perceived in the adaptation. Buffalo-Springfield Roller Co. v. Galion Iron Works, 6 Cir., 215 F.2d 686; Bobertz v. General Motors Corp., 6 Cir., 228 F.2d 94. We have held that when a specialized art is merely the offspring of a more generic art it is entitled to the previously disclosed useful characteristic of the ancestral estate. Page Steel & Wire Co. v. Smith Bros. Hardware Co., 6 Cir., 64 F.2d 512; Lempco Products, Inc., v. Simmons, 6 Cir., 140 F.2d 58. The present patent involves a machine, though for a specialized purpose, and elements and combinations common to well known machines of prior art are within the concept of analogous art. Dunham Co. v. Cobb, 6 Cir., 19 F.2d 328. The non-sticking virtue of Teflon and its probable use in the textile industry was clearly disclosed to the art more than a year before the filing of the application for the present patent, even though the appellee itself had never coated looms with the new material. The subject matter must have been obvious at the time the invention was made to a person having ordinary skill in the art to which the subject matter pertains. L. M. Leathers' Sons v. Goldman, 6 Cir., 252 F.2d 188. The slip-resistant materials in that case had not been used in prior art coat hangers.

Commercial success without invention will not make patentability. Great Atlantic & Pacific Tea Co. v. Supermarket Equipment Corp., 340 U.S. 147, 71 S.Ct. 127, 95 L.Ed. 162, and a higher standard of invention is exacted to sustain combination claims embracing old elements. While there is, of course, a presumption that a patent is valid, it loses much, if not all, of its force in defending against a challenge to its validity when no pertinent prior art references against are overruled. Here there were no such references or rulings.

The appellant urges that the issuance of a patent puts a heavy burden of proof upon one who challenges its validity and evidence that the alleged invention filled a long-felt want is prima facie evidence of invention, therefore, the District Court should have had the benefit of all of the evidence which the appellant could produce to support the presumption of validity. Such evidence, it recites, would include expert testimony interpreting the technical publications, evidence as to the state of the art and the duration of the problem's existence. With this evidence before it, the District Court would be in a position to render a decision based upon the merits. The argument does not fit the present case. The specification of the patent fully discloses prior art and the specific nature of the improvements claimed. The publications relied upon by the appellee speak for themselves and no expert testimony can change their disclosure that Teflon is a non-sticking plastic, whatever its chemical formula may be. Its major characteristic is proclaimed by the publications and by the patent itself. Teflon was not the invention or discovery of Ingham. The problem before him was to eliminate the clogging of lint in the slotted grate. A plastic that would do away with much of such clogging was at hand. Its chief characteristic was proclaimed to the world. He added it to his combination. It is as simple as that. Even though we take note of the caution against underrating simple patents, what Ingham did was not "invention." The court was not in error in concluding that no material factual issue existed to be disposed of at a trial. Bobertz v. General Motors Corp., supra. The judgment below is

Affirmed.