The B & S SCREW PRODUCTS CO.,
Plaintiff,

v.

The CLEVELAND METAL STAMPING
CO. and Hef-Co, Inc., Defendants.

No. 37116.

United States District Court
N. D. Ohio, E. D.

Sept. 24, 1964.

Victor M. Spohn, Cleveland, Ohio, for plaintiff.

Philip D. Golrick, Cleveland, Ohio, for defendants.

CONNELL, Chief Judge.

The plaintiff brought complaint against the defendants on August 9, 1961, alleging that the defendants, by the manufacture and sale of clamping blocks, were infringing United States Patent No. 2,-783,963, which was granted on March 7, 1957 to Glenn Kalberg, plaintiff's predecessor in interest. On September 1, 1961, the defendants, by answer, denied infringement and counterclaimed for a declaration of non-infringement and invalidity of the plaintiff's patent. The grounds advanced in attacking the validity of the patent were obviousness, lack of patentable novelty, and lack of invention over prior art. In seeking a declaration of non-infringement, the defendants claimed that, even if the plaintiff's patent is valid, a charge of infringement against

the defendants' devices must fall after consideration of the history of the plaintiff's patent claim, the prior art, and the file wrapper. The plaintiff denied generally the merits of the counterclaim on September 14, 1961.

The plaintiff propounded interrogatories to the defendants on August 29, 1961 and received full answer, after a ruling from this Court on defendants' objections, on February 2, 1962. The defendants requested Admissions of Fact from the plaintiff on November 19, 1962; there was no response from plaintiff, so these requests are deemed admitted. Rule 36, Federal Rules of Civil Procedure. The defendants addressed interrogatories to the plaintiff on November 23, 1962, but the plaintiff has failed to make response. Defendants sought additional admissions on December 10, 1963, which are also deemed admitted for lack of response. The defendants seek by this motion a summary judgment on both parts of their counterclaim; the plaintiff has not replied to this motion.

### PROPRIETY OF DISPOSITION ON MOTION FOR SUMMARY JUDGMENT

■ Some courts have been understandably reluctant to grant summary judgment in patent cases, since decision on the merits often demands expert testimony of a highly technical nature. This reticence varies from "extreme caution" (Kollsman Instrument Corp. v. Astek Instrument Corp., 225 F.Supp. 534 (S.D. N.Y.1964) to apparent adamance in the District Court of Massachusetts. Cf. Sponge Products Corp. v. Fowler, 140 F. Supp. 232 (D.C.Mass.1956); Staffin Lewis Corp. v. Rose Derry Co., 9 F.R.D. 704 (D.C.Mass.1950); but cf. Villani v. Industrial Shoe Machinery Corp., 210 F. Supp. 298 (D.C.Mass.1962). But these cases announce no new doctrine nor do they engraft any exception to Rule 56; this apparent exception, judicially established, has been overcome. 6 Moore's Federal Practice, § 56.17(44). Thus, as stated by Circuit Judge Weick, while sitting as a district judge of this District,

in W. E. Plechaty Co. v. Heckett Engineering, Inc., 145 F.Supp. 805, 807 (N.D.Ohio 1956):

> "While courts are understandably reluctant to grant a summary judgment, particularly in a patent case, nevertheless, it is the clear duty of the court to do so where no genuine issue of a material fact has been presented."

The Sixth Circuit Court has indicated that summary judgment is particularly apropos where no triable issue of fact is presented and "where the patents and products involved are sufficiently simple to make expert testimony unnecessary." Bobertz v. General Motors Corp., 228 F. 2d 94, 100 (6th Cir. 1955); cf. also Fromberg, Inc. v. Gross Manufacturing Co., Inc., 328 F.2d 803 (9th Cir. 1964); Ronel Corp. v. Anchor Lock of Florida, Inc., 325 F.2d 889 (5th Cir. 1963). The simplicity and relative brevity of the matter here to be considered clearly dictate disposition of this litigation by summary judgment. Here we have no need of expert testimony; the pleadings, admissions, affidavits, and exhibits show that there is no genuine issue as to any material fact, and these materials offer sufficient information to grant this motion.

The pleadings establish certain basic preliminary facts: the status of all parties as Ohio corporations, the ownership by the plaintiff of the Kalberg patent in suit, manufacture and sale of clamping blocks by the defendants within this judicial district. Therefore the Court has jurisdiction over the persons of the parties and venue is proper. Jurisdiction of the Court over the subject matter of the complaint and of the counterclaim is admitted.

Although the plaintiff did not respond to defendants' interrogatories seeking identification of the accused clamping blocks, defendants' blocks as manufactured and sold before suit and thereafter are described in responses to interrogatories propounded by plaintiff, and by drawings and photographs and certain described minor modifications thereof

identified by the affidavit of an officer of defendants attached to the present motion and supporting brief. No opposing affidavit was filed controverting the contention that this material fairly represents all the blocks manufactured and sold by defendants. Also deemed admitted by plaintiff are the facts that no blocks manufactured or sold by the defendants have ever included certain structure. Cf. Requests for Admissions, Nos. 8–11. This becomes important in construing the plaintiff's claim of infringement. Cf. infra, p. 850.

Before us as exhibits attached to Requests for Admissions served by defendants and to the motion papers are: printed copies, as sold to the public by the Patent Office (or photo copies thereof), of the Lind patent 1,623,689, the Gessler patent 2,650,436, and the Kalberg patent in suit 2,783,963; copies of file claims 1 to 5 inclusive, in the Kalberg application Serial No. 500,127, as originally filed; the text of a first and only Patent Office action; the text of the application file claim 6 (now the patent claim) and of the "remarks" or argument included in the sole amendment filed in the application, responsive to that Patent Office action. The plaintiff has admitted, by its silence, that these are correct copies.

## THE KALBERG PATENT

The Kalberg clamp block as disclosed in the patent (see Figs. 3 and 4) is comprised simply of a set of several perforated metal plates, the bottom plate as a base, a washer, and a bolt through the set. The plates are shown as rectangular, each with a hole near one end, and identical, except that a bottom plate as a base is thicker and has a threaded hole into which the bolt is screwed. The washer is a spring washer between the top plate and the underside of the bolt head, described as flat, but actually shown as upwardly convex. The bolt, pivotally fastening the plates together as a stack on the base, has beneath the head a long plain shank through the aligned plate holes and terminating at a lower threaded end screwed into the base plate, the threaded

end reduced in diameter to form a shoulder at the end of the shank bearing on the base to limit the extent of threaded engagement. The shank length, i. e., the distance from the bottom of the head to the shoulder, is slightly greater than the height of the plates stacked on the base, obviously necessary to accommodate the washer.

The essential Kalberg function is to provide a block in which by swinging one or more of the uppermost plates successively out of alignment a selected effective block height remains. The spring washer permits this without need of loosening the bolt, as explicitly stated in the patent; and, conversely, it is implicit that the spring washer under the bolt head applies some pressure to the stack to retain the plates in any given position unless purposely shifted.

Although usable for other purposes, utility of the block is shown in patent drawing as used in work set-up on machine tools to support for example one end of a work-piece clamping strap or clamping head at about the same height as the other end bearing on the work-piece.

The single claim, though directed to the block *per se*, is rather long due to technicalities of claim drafting, and reads:

"In an adjustable clamp block, a flat base having a first end and a second end, and a flat top, a stack of flat superimposed and normally registered plates resting upon said top of the base including an uppermost plate, said plates having first ends and second free ends, registered holes in said first ends of the plates, a bolt having a smooth shank extending through said holes, said shank having a lower end bearing upon the top of the base, a reduced threaded terminal on the lower end of the shank threaded into the top of the base, said shank having an upper end, an enlarged head on the upper end of the shank above the stack having an underside, the distance between the underside of the head and

the top of the base being slightly greater than the height of the stack plates, and an expanding spring interposed between the underside of said head and the uppermost plate, the plates being independently pivotable on the bolt shank."

## KALBERG PATENT PROSECUTION

The Kalberg patent application, as filed on April 8, 1955, had five claims, all of which were rejected in the sole Patent Office action, citing only the four patents listed on the printed patent.[1] The Patent Office did not cite Lind or Gessler, the only patents relied upon by defendants as prior art for purposes of this motion. Kalberg's responsive and sole amendment cancelled those five rejected claims replacing them with file claim 6, the patent claim. This amendment urged that the four references—

"failed to show an adjustable clamp block involving a base have a stack of plates thereon, a bolt having a smooth shank traversing holes in one end of the plates, a shoulder on the lower end of the shank bearing upon the top of the base in which a stud on the lower end of the shank is secured, a head on the upper end of the shank, the distance between the underside of the head and the top of the base being slightly greater than the height of the stack, and an expanding spring positioned between the uppermost plate and the underside of the head as recited by claim 6."

The description was also amended consistently with the drawing to emphasize the shank as "smooth" and having the "reduced threaded end" of the patent claim.

Analysis of the five cancelled claims shows them as directed essentially:

In claim 1, to a stack of flat rigid plates and means "for elastically clamping the plates in stacked position," with claim 2 specifying the plates as steel and rectangular;

In claim 4, to a stack of rectangular steel plates and elastic clamping means, including a base plate, a clamp bolt through the stack threaded into a base plate and "resilient means" clampable by the bolt head against the top plates;

Claim 5 being identical therewith except, in place of the broader term "resilient means," reciting a spring washer between the bolt head and top plate, the bolt head compressing only the spring washer; while in claim 3, the claim 4 description of the plates as "steel" and "rectangular" is omitted.

Comparison of the patent claim with even claim 5, the most limited of the cancelled claims, shows that the essential difference lies in the limiting description (1) of the bolt as "having a smooth shank extending through the holes, said shank having a lower end bearing on the top of the base, a reduced terminal on the lower end of the shank" and (2) of the bolt head-to-base distance as slightly greater than the stack height. The other structure of the patent claims was either explicitly or implicitly present in the structure described for example of claim 5. These limitations, not present in the cancelled claims and in effect introduced for the first time in the patent claim, were characterized as inventive improvement over the cited prior art in the argument of the amendment for patentability of the claim. One of the significant elements of the device and one not present in the accused product is the adjustable spring washer.

Therefore, in construing the patent claim, these limitations cannot be ignored; the patentee or his assignee are estopped to assert a broader construction by doing so in order to urge infringement. The law is long settled on this point. I. T. S. Rubber Co. v. Essex Rubber Co., 272 U.S. 429, 47 S.Ct. 136, 71 L.Ed. 335; Royer v. Coupe, 146 U.S. 524,

---

1. These were: 1,080,064, Huber, Dec. 2, 1913; 2,351,436, Ketz, June 13, 1944; 2,498,171, Michler, Feb. 21, 1950; 2,-541,605, Ohlsson, Feb. 13, 1951.

13 S.Ct. 166, 36 L.Ed. 1073; Nickerson v. Bearfoot Sole Co., Inc., 311 F.2d 858 (C.C.A.6th Cir. 1963); see also Walker, The Law of Patents for Inventions (Dellers Ed.), Vol. 2, pp. 1214–1216, 1218. To ignore such limitations would be to permit, by a broadening construction of the claim, the recapture of what Kalberg yielded and the Examiner rejected because it offered no significant inventive improvement over the cited prior art.[2]

### DEFENDANTS' BLOCKS

As far as utility and general function are concerned, defendants' blocks are admitted by defendants to be identical with the Lind or Kalberg blocks, in so far as they provide a set of blocks of adjustable height, by swinging uppermost blocks out of alignment in a plate stack until the desired height is reached.

Two types, "Block I" and "Block II", have been manufactured and sold by defendants, both comprising a stack of about sixteen substantially identical rectangular $1/8$th inch steel plates each perforated near one end, and a fastener through the perforations pivotally securing them together.

In Block 1 the fastener is an unheaded rod with lower end secured in the bottom plate and top end roll threaded for a clamping wing nut with the intervening "shank" smooth; the lower rod end roll is threaded and screwed into a threaded aperture of the bottom plate in an early form, but in a later form it is unthreaded and press-fitted into the bottom aperture. Contrary to the patent claim (a) the threaded end portions in Block I are not reduced threaded terminal portions but of larger diameter than the smooth shank, (b) there is no shank end or shoulder against the base top; obviously there is (c) no head and (d) no spring element whatsoever. The nut is tightened and loosened as required to free the plates for pivoting movement or secure-

ment in selecting a particular block height, quite in contrast with the feature of the Kalberg block attributed to the use of the expanding spring (i. e., the washer) recited in the claim. It is almost incredible that the plaintiff would accuse this device, with a manually-operated wing nut controlling the tension of the plates, as an infringer of its Kalberg patent.

Block II in contrast to the patent claim uses merely a simple flat-headed rivet as the fastener with a hollow bottom end flanged over outwardly into a slight bottom counterbore of the bottom plate aperture to secure the stack of plates in pivotal relation and apart from the head. This accused device lacks all the bolt characteristics and bolt structure recited in the claim; it lacks a spring washer, an expanding spring or anything similar thereto in structure or function. Block II further has in each plate another aperture, the purpose of which is here immaterial, but it is noted that this block bears in all respects a striking resemblance to the Lind block, to which we will refer later. Furthermore, the plaintiff has admitted, by its refusal to respond to the defendants' Requests for admissions, that the defendants have never manufactured or sold a device which has a bolt—

> "having a smooth shank extending through said holes, said shank having a lower end bearing on the top of the base, a reduced threaded terminal on the lower end of the shank threaded into the top of the base"

(Request No. 9); nor includes an "expanding spring" nor any type of spring interposed between a bolt head and an uppermost plate of a stack of plates as required by the Kalberg patent claim. (Request No. 11).

Thus it is clear that the claim cannot be "read upon" defendants' blocks, as

---

2. Not only the applicant is bound by the proceedings on the patent application but also those in privity with him, are similarly estopped, as subsequent assignees of the patent. Kinnear-Weed Corp. v.

Humble Oil & Refining Co., 150 F.Supp. 143, aff'd. 259 F.2d 398 (C.C.A.5th Cir. 1958); Taylor-Reed Corp. v. Mennen Food Products, Inc., 324 F.2d 108 (C.C.A.7th Cir. 1963).

structural features clearly spelled out in detail in the claim and their function are entirely lacking in the blocks before us.

■■ On this basis alone, the lack of structure explicitly set forth in the claim in terms clear and distinct, the claim is not infringed by defendants, for such a claim "the Courts cannot alter or enlarge." See Cimiotti Unhairing Co. v. American Fur Refining Co. et al., 198 U.S. 399, 410, 25 S.Ct. 697, 49 L.Ed. 1100, 1105; Keystone Bridge Co. v. Phoenix Iron Co., 95 U.S. 274, 24 L.Ed. 344, 346; Martin et al. v. H. C. Miller Co., 63 F.2d 5 (C.C.A.7th Cir. 1932).

Secondly, the very points of structure, whereby the patent claim differs from the rejected cancelled claims, or was amended and argued as distinctions over the prior art cited against the rejected cancelled claims, as previously noted, cannot be ignored in construing a claim for infringement purposes; since such is the structure admitted by plaintiff (Request No. 9), and also from the exhibits found to be lacking in defendants' blocks, on this distinct basis also defendants' blocks are found not to infringe the claim.

### VALIDITY OF THE KALBERG PATENT

Defendants have also counterclaimed for a declaration that the patent is invalid on the grounds of obviousness and non-invention over prior art. As we address this portion of the motion, we are mindful that courts are unusually reticent to invalidate a patent upon motion for summary judgment. Tiptop Products Co. v. Delamere Co., Inc., 133 U.S.P.Q. 150 (S.D.N.Y.1962); Long v. Arkansas Foundry Co., 247 F.2d 366 (8th Cir. 1957); Rankin v. King, 272 F.2d 254 (9th Cir. 1959). However, courts have used summary judgment where the issue is the invention, if any, over prior art and the prior art and the claims are, without the aid of expert testimony, easily understandable by anyone of modest intelligence. Geo. P. Converse & Co., Inc. v. Polaroid Corp., 242 F.2d 116 (1st Cir. 1957). We think that the devices in the instant case are sufficiently simple so as to negate the need for expert explanation.

■ We proceed to the question of validity, even though we have absolved the defendants of any culpable infringement, for two reasons. We are mindful, first, of the public interest; it is important to the public generally that an invalid patent "should not remain in the art as a scarecrow." Addressograph-Multigraph Corp. v. Cooper, 156 F.2d 483 (2nd Cir. 1946). This pursuit of the public interest authorizes consideration of the patent even though we have already determined that the patent has not been infringed by the accused blocks of defendants. Consideration of this issue will also be helpful in appraising the defendants' prayer for attorneys' fees.

■■ It is axiomatic that a strong presumption of validity attaches to a patent upon its issuance by the Patent Office; this is justifiably so, in view of "the complexities of patent law and the expertise of the patent office." Monroe Auto Equipment Co. v. Heckethorn Mfg. & Supply Co., 332 F.2d 406 (6th Cir. 1964). This presumption does more than require an adversary to adduce controverting evidence which merely preponderates; the presumption may be rebutted only by clear and convincing evidence. Ruth v. Blue River Constructors, 224 F. Supp. 717 (D.C.Colo.1963); Bewal, Inc. v. Minnesota Mining & Mfg. Co., 292 F.2d 159 (10th Cir. 1961); Minneapolis-Honeywell Regulator Co. v. Midwestern Instruments, Inc., 188 F.Supp. 248 (N.D. Ill.1960). Of course, the presumption is substantially weakened if applicable prior art has not been considered by the Patent Office. Monroe Auto Equipment Co., supra; Preformed Line Products Co. v. Fanner Mfg. Co., 328 F.2d 265, 271 (6th Cir. 1964); Harvey v. Levine, 322 F.2d 481, 484 (6th Cir. 1963). It is readily apparent that Lind and Gessler represent pertinent prior art which was not before the Patent Office. Whether the Examiner would have refused the application may easily be resolved after comparing the claims of the patent and this uncited art.

Keeping in mind the claims of the patent, we turn our attention first to Lind Patent No. 1,623,689. Fig. 5 clearly shows the basic adjustable block function and structure of the patent in suit. Fig. 5 discloses a block of adjustable height comprised of some 20 essentially identical stacked plates secured together pivotally by a fastener near one end, but without any spring washer. It is not stated whether the fastener (of which only the head appears above the top plate of the stack) is either a bolt screwed into, or a rivet secured to, the bottom plate. Here, as in Kalberg's blocks, a set of plates are held pivotally by the fastener, rather than being loose and piled one by one into the stack, and may be successively swung out of the stack to attain a desired height. Hence, the only difference between the claims of Kalberg and the teachings of Lind are the use of the spring washer and use of a bolt with a threaded end and a shank length chosen to accommodate the washer. Of course the extra length of the shank is of no moment by itself because it is chosen merely to accommodate the washer.

Gessler Patent No. 2,650,436, issued September 1, 1953, discloses a gauging device, a structure and function far more sophisticated than Lind or Kalberg. However, it does include a base and several relatively thicker plates stacked thereon, each having an opening near one end for a long smooth rod with a lower threaded end screwed into the base and thereabove a smooth shank on which the blocks, except one, are pivotally mounted. Thus, Kalberg's rod is an old element.

In addition to these uncited patents, we have an article from the August 1949 issue of "The Tool Engineer" entitled "Adjustable Height Block," which reads:

"The height block illustrated will be found highly useful in the shop for clamping work on the tables of milling machines, planers, drill presses and other machine tools. It will replace makeshift scrap blocks, which must be hunted up, and which have an uncanny way of disappearing just when needed.

"The block consists of a round plate, (A), which has an eccentrically located tapped hole into which the bolt (B) is threaded, and then peened over on the end. Strung on this bolt are a number of 1/8 in. thick washers, (C), all of which have eccentrically located holes, drilled for clearance fit on the bolt B.

"In use, the assembled unit is placed on the machine table. The height at which the clamp must bear on the workpiece is ascertained, and all washers beyond this height are then swung out of the way, as shown. The clamp will then lie closely parallel with block and workpiece. If so desired, a stud can be substituted for the bolt, in which case a nut can be used to retain the washers. In any event, a set of these height blocks, kept handy in the tool box, will both save time and provide safer setups."

This publication is perhaps even more convincing than the cumulative effect of Lind and Gessler, for it shows explicitly all that Kalberg claims except the spring element beneath the bolt head and the lower end reduced to bear on the base.

Taken together, do these uncited devices show, by clear and convincing evidence, that the Kalberg patent is invalid for non-invention? We think the answer is obviously affirmative. Kalberg's improvement over prior art involves the interposition of a simple washer between the top of the stack and the bolt; Is this the "impalpable something which distinguishes invention from mere mechanical skill?" Preformed Line Products Co. v. Fanner Mfg. Co., 328 F.2d 265 (6th Cir. 1964). The answer is obvious.

We find that the Kalberg patent is invalid.

Defendants in their prayer for affirmative relief have made the usual request for attorneys' fees; this point, however, is not raised in their brief. We think it appropriate that a question of this importance should be the subject of proper briefing and argument by the par-

ties. Therefore, in their application for costs the defendants may properly raise this point.

Defendants' Motion for Summary Judgment is granted, with costs to be assessed against the plaintiff.